IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TEDDIE WILLIAMS, Individually and as Parent and
Next Friend of Rainan Samayoa; RAINAN SAMAYOA,
a Mentally Challenged Person; and MARIA CONTRARAS,
Conservator & Guardian of Rainan Samayoa,

        Plaintiffs,

vs.                                                                              No. CIV 13-0479 JB/WPL

BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO,
a body corporate of the State of New Mexico, for itself and its public operations
including UNIVERSITY OF NEW MEXICO HEALTH SCIENCES
CENTER and its components the UNIVERSITY OF NEW MEXICO
SCHOOL OF MEDICINE, UNIVERSITY OF NEW MEXICO HOSPITAL
BEHAVIORAL HEALTH PROGRAMS, UNIVERSITY OF
NEW MEXICO PSYCHIATRIC CENTER, BERNALILLO COUNTY
METROPOLITAN DETENTION CENTER, and CORRECTIONAL
HEALTHCARE COMPANIES, INC., a foreign corporation,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Remand of Claims

Against the Board of Regents of the University of New Mexico and the Bernalillo County

Metropolitan Detention Center with Supporting Points and Authorities, filed June 24, 2013 (Doc.

16)("Motion for Remand").  The Court held a hearing on November 19, 2013.  The primary

issues are: (i) whether the Defendant Board of Regents of the University of New Mexico "and its

identified components," including Defendant University of New Mexico Health Science Center,

Defendant University of New Mexico School of Medicine, Defendant University of New Mexico

Hospital Behavioral Health Programs, and Defendant University of New Mexico Psychiatric

Center (collectively, the "UNM Defendants"), waived immunity under the Eleventh Amendment

to the Constitution of the United States of America by removing the case to federal court;

(ii) whether the Court has original jurisdiction over the Plaintiffs' claim that the UNM Defendants violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"); and (iii) whether the Court may exercise supplemental jurisdiction over the remaining claims.  The Court concludes that the UNM Defendants' counsel have authority to represent the UNM Defendants and waived Eleventh Amendment immunity by removing the case to federal court.  The Court has federal-question jurisdiction over the Plaintiffs' EMTALA claim against the UNM Defendants and has supplemental jurisdiction over the remaining claims, because they form part of the same case or controversy as the EMTALA claim.  The Court will deny the Motion for Remand.

## FACTUAL BACKGROUND

The Court takes its facts from the Second Amended Complaint for Damages and Medical Negligence, filed November 26, 2013 (Doc. 30)("SAC").  In 2010, Plaintiff Rainan Samayoa was twenty-five years old and "already had a very significant psychiatric history including a traumatic brain injury."  SAC ¶ 13, at 3.  On July 3, 2010, Plaintiff Teddie Williams, Samayoa's mother, took Samayoa to the UNM Psychiatric Center emergency services, because he had symptoms of disorganized behavior; he was admitted to the UNM Hospital Behavioral Health Programs and discharged on August 2, 2010.  See SAC ¶¶ 14, at 3.  During his stay at the UNM Hospital Behavioral Health Programs and subsequent visits through February 8, 2011, Samayoa was diagnosed with chronic schizophrenia, paranoid ideation, intermittent explosive disorder, auditory hallucinations, post-traumatic stress disorder, borderline intellectual disorder, and traumatic brain injury.  See SAC ¶ 15, at 3-4.  When he was released from the UNM Hospital Behavioral Health Programs, his "mental condition had stabilized to the point he could hold meaningful conversations with his mother, Plaintiff Williams.  He could function mentally

within limitations and was not a harm to himself or others."  SAC ¶ 16, at 4.

On January 19, 2011, Samayoa exhibited "psychiatric behavioral problems including disorientation, confusion, depression and aggression" while he was at Valencia Counseling in Los Lunas, New Mexico; he was transported to the UNM Psychiatric Center emergency services. SAC ¶ 17, at 4.  The UNM Hospital Behavioral Health Programs staff evaluated Samayoa and determined that he should be admitted for safety and stabilization; Samayoa was admitted involuntarily.  See SAC ¶ 18, at 4.  "A few minutes later, Plaintiff Samayoa allegedly assaulted two staff members.  Instead of treating his conduct which was consistent with his mental disorder, staff involved the UNM Police Department and ultimately had Plaintiff Samayoa discharged to the custody of the Albuquerque[, New Mexico,] Police Department . . . ."  SAC ¶ 19, at 4.  While he was incarcerated, Samayoa was not given his psychotropic medications, "even though [Defendants Correctional Healthcare Companies, Inc. and Bernalillo County Metropolitan Detention Center ("BCMDC")] staff were aware he was very ill and had been on suicide watch at [the UNM Hospital Behavioral Health Programs]."[1]  SAC ¶¶ 21, at 4-5. Samayoa was incarcerated until January 26, 2011, and then transported back to the UNM Hospital Behavioral Health Programs.  See SAC ¶ 20, at 4.

On February 5, 2011, Samayoa called 911, stating that he wanted to kill himself; the

---

[1] The SAC states that Samayoa had been on suicide watch at "UNMH."  While the SAC does not define that acronym, it most likely refers to the UNM Hospital, which is commonly called UNMH in the area.  In any case, the Court believes Plaintiffs intended to state more specifically that Samayoa had been on suicide watch at the UNM Hospital Behavioral Health Programs, which the Plaintiffs abbreviate as "UNMHBHP"; the Plaintiffs may have also intended the University of New Mexico Health Sciences Center, which they abbreviate as "UNMHSC."  SAC ¶¶ 5, 7, at 2; id. ¶ 21, at 5.

Belen, New Mexico, Police Department took Samayoa to the UNM Psychiatric Center[2] emergency services.  See SAC ¶ 23, at 5.  The UNM Hospital Behavioral Health Programs evaluated Samayoa after he spent about fifty-two hours in the emergency services and determined that "his actions were inappropriate, that he had become progressively worse since incarceration and planned to transfer him from [the UNM Psychiatric Center] emergency services to [the UNM Hospital Behavioral Health Programs] as soon as a bed was available for him (in-patient care)."  SAC ¶ 24, at 5.  On February 8, 2011, the UNM Hospital Behavioral Health Programs had a unit available, "but instead, transported [Samayoa] to Mesilla Valley Hospital in Las Cruces, New Mexico, without Plaintiff Williams' consent and against her wishes."  SAC ¶ 25, at 5.  The Mesilla Valley Hospital assessed that Samayoa was a danger to himself and others, and diagnosed him with a psychotic disorder and a traumatic brain injury. See SAC ¶ 26, at 5.  Samayoa stayed at Mesilla Valley Hospital until February 24, 2011, and was then transferred to New Mexico Behavioral Health in Las Vegas, New Mexico, where he stayed until he was discharged on April 21, 2011, and ultimately diagnosed with intermittent explosive disorder, psychotic disorder, and a traumatic brain injury.  See SAC ¶¶ 26-27, at 5-6.

After these events, Samayoa "has not regained enough mental stability to hold any degree of meaningful conversations with his mother, Plaintiff Williams, or anyone else.  He has remained in a volatile mental state and is periodically dangerous to himself and to others."  SAC ¶ 28, at 6.

---

[2] In paragraph 23 of the SAC, the Plaintiffs state that the Belen Police Department to the Defendant to "UNMPS emergency services."  SAC ¶ 23, at 5.  The Court believes the Plaintiffs intended to write "UNMPC," which is their abbreviation for the UNM Psychiatric Center.  SAC ¶ 8, at 2.

## PROCEDURAL BACKGROUND

The Plaintiffs allege that the Defendants breached the standard of care for supervision, assessment, treatment, care and monitoring; that the Defendants' actions were "reckless, intentional, willful, wanton, oppressive, malicious, and done in reckless disregard of Plaintiff's rights and safety"; and that, because of the Defendants' "negligence and departure from the standard of care, Plaintiffs have suffered, and continue to suffer, great personal injuries, great physical pain, mental anguish and other physical and economic damages, and have incurred expenses in an attempt to cure and/or treat their injuries." SAC ¶¶ 29-31, at 6. The Plaintiffs allege six claims for relief against the Defendants: (i) medical negligence, see SAC ¶¶ 33-37, at 6-7; (ii) negligence *per se* for violating EMTALA, see SAC ¶¶ 38-43, at 7-8; (iii) negligence, see SAC ¶¶ 44-48, at 8; (iv) intentional infliction of emotional distress, see SAC ¶¶ 49-53, at 8-9; (v) negligent infliction of emotional distress, see SAC ¶¶ 54-58, at 9-10; and (vi) loss of consortium, see SAC ¶¶ 59-64, at 11.

On May 24, 2013, the UNM Defendants removed the case to federal court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. See Notice of Removal at 1, filed May 24, 2013 (Doc. 1). The BCMDC concurs in removal. See Notice of Removal ¶ 6, at 3; Notice of Consent to Removal by Defendant Bernalillo County Metropolitan Detention Center at 1-2, filed May 28, 2013 (Doc. 5). The UNM Defendants assert that the Court has federal-question jurisdiction pursuant to 18 U.S.C. § 1331, because the Plaintiffs' SAC alleges that the Defendants violated EMTALA; the Defendants contend that the Court may exercise supplemental jurisdiction over the claims in the remaining counts, because the remaining claims are so related to the federal law claim that they form part of the same case and controversy. See Notice of Removal ¶¶ 3-4, at 2-3.

The Plaintiffs contend that removal was improper, because the State of New Mexico,

through its sub-division University of New Mexico, is postured as a defendant and has Eleventh

Amendment immunity.  See Motion for Remand ¶ 6-7, at 2.  The Plaintiffs assert that the

Eleventh Amendment bars a state's own citizen from suing the State in federal court and that

Ward v. Presbyterian Healthcare Services, 72 F. Supp. 2d 1285 (D.N.M. 1999)(Garcia, M.J.)

makes clear that the Court lacks jurisdiction over the EMTALA claims against the UNM

Defendants.  See Motion for Remand ¶¶ 9-10, at 3.  Further, the Plaintiffs contend that Guttman

v. Khalsa, 669 F.3d 1101 (10th Cir. 2012)(Tymkovich, J.), requires a state to show an

unequivocal intent to waive sovereign immunity and that the Notice of Removal does not meet

that high standard.  See Motion for Remand ¶ 12, at 3.

> Specifically, there is no showing of an unequivocal intent to waive immunity,
> there is no reference the state agrees to be bound by any judgment of this court,
> no reference to any consideration to make this purported waiver enforceable on a
> contractual basis, no reference to any remedy for a subsequent breach of this
> waiver, nor any reference to waive in any appellate court.

Motion for Remand ¶ 12, at 3-4.  The Plaintiffs express concern about Garcia v. Rodey,

Dickason, Sloan, Akin & Robb, P.A., 1988-NMSC-014, 106 N.M. 757, 750 P.2d 118, in which

"an earlier representation by a state defendant, that it was not going to raise Eleventh

Amendment immunity, yet later did, was held to not be an effective waiver of immunity . . . ."

Motion for Remand ¶ 13, at 4.  That case described the Tenth Circuit's decision in Garcia v. Bd.

of Educ., 777 F.2d 1403 (10th Cir. 1985), in which the Tenth Circuit permitted the school board

to raise Eleventh Amendment immunity on appeal; the Tenth Circuit held that Eleventh

Amendment immunity is jurisdictional, and thus, could be raised at any time, even though it led

to "'sand bagg[ing]'" the trial court and the plaintiff.  Motion for Remand ¶ 13, at 4 (quoting

Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 106 N.M. at 760, 750 P.2d at 121).  The

Plaintiffs contend that the only safeguard for UNM's lack of waiver is for the Court to remand

- 6 -

the case to the state court.  See Motion for Remand ¶ 14, at 4.  Lacking original or supplemental jurisdiction, the Plaintiffs contend that the Court should also remand the claims against the BCMDC and the non-EMTALA claims against the UNM Defendants.  See Motion for Remand ¶ 15, at 4-5.

The UNM Defendants identify that the dispute between the parties "centers on whether UNM waived its *Eleventh Amendment* immunity" by removing the case to federal court and contends that "the voluntary act of removal is sufficient to invoke federal jurisdiction."  Board of Regents of the University of New Mexico's ("UNM") Response in Opposition to Plaintiff's Motion to Remand at 1-2, filed July 8, 2013 (Doc. 20)("UNM Response")(emphasis in original).  Citing Lapides v. Board of Regents, 535 U.S. 613 (2002), and Steadfast Insurance Co. v. Agricultural Insurance Co., 507 F.3d 1250 (10th Cir. 2007)(Baldock, J.), the UNM Defendants assert that, by removing the case to federal court, it voluntarily invoked federal jurisdiction and waived its Eleventh Amendment immunity.  See UNM Response at 2.

> However, to the extent Plaintiff or the Court seek a further declaration -- UNMH Defendant[3] affirmatively invokes the jurisdiction of the United States District Court for the District of New Mexico under 28 U.S.C. § 1331 and further asserts that it has knowingly and voluntarily waived its Eleventh Amendment immunity in federal court.

UNM Response at 2.  The UNM Defendants argue that Ward v. Presbyterian Healthcare Services, which the Plaintiffs cite, is not directly applicable, because it does not discuss removal as a waiver of Eleventh Amendment immunity.  See UNM Response at 2-3.  The UNM Defendants point out that Ward v. Presbyterian Healthcare Services acknowledges the need for a "'clear declaration'" to waive immunity, at which point, the case "dovetails" with Lapides v.

---

[3] It is not clear whether "UNMH Defendant" refers to the UNM Health Science Center, the University of New Mexico Hospital Behavioral Health Programs, or UNM generally.

Board of Regents.  UNM Response at 3.  The UNM Defendants assert that the Plaintiffs do not need to be concerned about Garcia v. Rodey, Dickason, Sloan, Akin, & Robb, P.A., because that case was not removed to a federal court and is therefore not applicable.  See UNM Response at 3.

Defendant Board of County Commissioners of the County of Bernalillo states that it operates the BCMDC, and that the Plaintiffs incorrectly named the BCMDC rather than the Board of County Commissioners as a Defendant.  See Defendant the Board of County Commissioners of the County of Bernalillo's Notice of Adoption by Reference of Defendant Board of Regents of the University of New Mexico's Response in Opposition to Plaintiff's Motion to Remand [Doc. #20] at 1, filed July 15, 2013 (Doc. 21)("Adoption").  The Board of County Commissioners adopts and incorporates the UNM Response, including the arguments and authorities, and asks the Court to maintain jurisdiction over the case.  See Adoption at 1-2.

The Plaintiffs did not file a reply.  See Notice of Completion of Briefing ¶ 1, at 2, filed September 23, 2013 (Doc. 22).

At the hearing on November 19, 2013, the Court brought to the parties' attention two of its previous opinions that address whether a state agency's removal to federal court waives Eleventh Amendment immunity: Abreu v. New Mexico Children, Youth & Families Department, 646 F. Supp. 2d 1259 (D.N.M. 2009)(Browning, J.), and Armijo v. State, Department of Transportation, No. CIV 08-0336, 2009 WL 1329192 (D.N.M. April 6, 2009)(Browning, J.).  See Transcript of Hearing at 2:11-13 (Court)(taken November 19, 2013)("Tr.");[4] id. at 5:15-18 (Court).  The Court explained that, in Abreu v. New Mexico

_____

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line

- 8 -

Children, Youth & Families Department, the issue was whether private attorneys, rather than the state's Attorney General, could waive the Eleventh Amendment immunity for a state agency by removing the case. See Tr. at 2:14-21 (Court). The Court said that, under Lapides v. Board of Regents, the state's act of removing a lawsuit from a state court to federal court waives Eleventh Amendment immunity and that case does not require the state's Attorney General to be the one to remove the case. See Tr. at 3:6-22 (Court). The Court explained that, in Abreu v. New Mexico Children, Youth & Families Department, it determined that the New Mexico state agency in the case -- the Risk Management Division of the General Services Department -- had the statutory authority to hire legal counsel, and that the agency did not operate "totally divorced from the Attorney General's authority and supervision." Tr. at 4:3-12 (Court). Thus, the Court determined in that case that the attorneys' acts of removing the case to federal court properly waived the state agency's Eleventh Amendment immunity. See Tr. at 4:13-17 (Court). The Court noted that, because of the Tenth Circuit's holding in Garcia v. Board of Education, which Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A. described, the Court asked the private attorneys in Abreu v. New Mexico Children, Youth & Families Department to secure a commission from the Attorney General and to obtain a letter from the him stating that he concurred in waiving the state's Eleventh Amendment immunity. See Tr. at 4:18-5:7 (Court). The Court asked the attorneys for the UNM Defendants to do the same -- to secure a commission from Attorney General that establishes their authority to represent the UNM Defendants, and to obtain a letter from the Attorney General stating that he concurs in removing the case to federal court and waiving Eleventh Amendment immunity. See Tr. at 5:8-13 (Court). Turning to

---

numbers.

Armijo v. State, Department of Transportation, the Court said it reaffirmed its prior decision that removal is a voluntary waiver of Eleventh Amendment immunity, and in that case, neither party contended that the attorney representing the department lacked authority to represent the department.  See Tr. at 5:14-6:14 (Court).  In light of those cases, the Court said it was inclined to deny the Motion for Remand, so long as the attorneys for the UNM Defendants could give the same assurances that the Court required in Abreu v. New Mexico Children, Youth & Families Department.  See Tr. at 6:15-24 (Court).

     The Plaintiffs said that opposing counsel brought Abreu v. New Mexico Children, Youth & Families Department to their attention, and that they are in accord with the Court's discussion. See Tr. at 7:4-6 (Barela).  The Court asked the attorneys for the UNM Defendants if they thought they could provide the Court with a copy of their commission and assurance from the Attorney General that he approves waiving the Eleventh Amendment immunity.  See Tr. at 7:7-14 (Court). The attorneys for the UNM Defendants said they did not anticipate any problems with obtaining those assurances; they explained that they found Abreu v. New Mexico Children, Youth & Families Department the previous evening and said they think the Court's approach in that case would be workable.  See Tr. at 7:15-25 (Narvaez).  The BCMDC did not discuss the Motion for Remand.  See Tr. at 8:2-4 (Court, Quinones).

     The Court said that it would deny the Motion for Remand on the condition that the UNM Defendants' attorneys get a commission from the Attorney General in writing and assurances that the Attorney General does not have a problem with the UNM Defendants waiving Eleventh Amendment immunity.  See Tr. at 8:5-11 (Court).  The Court asked the UNM Defendants to file the documents or send them to the Court for the Court to file.  See Tr. at 8:12-17 (Court).

## LAW REGARDING FEDERAL-QUESTION JURISDICTION

A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.   Federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)).   As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 (1983)).   See Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'"   (quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986))).   While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399.   Even the plaintiff can only go so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-

question jurisdiction exists.  Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

In addition to the requirement that the federal question appear on the face of the complaint, a "plaintiff's cause of action must either be (i) created by federal law, or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'"  Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1235 (10th Cir. 2003)(quoting Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. at 808).  As for the second method, beyond the requirement of a substantial question of federal law at the heart of the case, the federal question must also be "contested."  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005).  Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 313.  In particular, the court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts.  Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims).

In Bar J Sand & Gravel, Inc. v. w. Mobil N.M. Inc., No. Civ. 05-800JBWPL, 2005 WL 3663689 (D.N.M. Sept. 29, 2005)(Browning, J.), the plaintiff's complaint stated causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and unfair trade practices.  See 2005 WL 3663689, at *7.  The defendants argued that a federal question was apparent on the face of the complaint

> because, as a necessary first step in proving a breach of contract, Bar J [Sand and
> Gravel, Inc.] must show that a valid contract actually exists between Bar J and the
> Defendants.  To establish that the parties entered into a valid contract, Bar J must
> show that all conditions precedent were met, including Bar J's possession of a
> valid [Sand and Gravel] Permit [that the Pueblo of San Felipe issued to Bar J
> Trucking, Inc.].  In turn, whether Bar J [Sand and Gravel, Inc.] acquired a valid
> Permit requires reference to the federal regulations governing the issuance of
> those permits.  Reaching the last link in their chain of argument, the Defendants
> assert that the federal question is whether the creation of the Permit complied with
> those regulations.

2005 WL 3663689, at *8 (internal citations omitted).  The Court determined that the defendants'

argument confused "a condition precedent to contract performance with a condition precedent to

contract formation," and that the argument was raising an issue of federal law as a potential

defense, rather than as an element of the plaintiff's case; as such, the issue did not appear on the

face of the plaintiff's complaint.  2005 WL 3663689, at *8-9 (emphasis in original).   The

defendants also argued that whether the plaintiffs validly assigned the Permit to the defendants

raised an issue of federal law, because, "[u]nder federal regulations, an assignment of the Permit

would be invalid without approval by the Secretary of the Interior"; the Court rejected this

argument, because the plaintiff did not request "vindication of any assignment" in the complaint,

and the Court determined the plaintiff was justified in that choice.  2005 WL 3663689, at *9.

The Court further determined that the Supreme Court's decision in Grable & Sons Metal Prods.

v. Darue Eng'g & Mfg. did not change the result, because,

> [u]nlike Grable, Bar J does not premise its breach of contract claim on any point
> of federal law.  Bar J does not assert that it has a right to recover from the
> Defendants because of the existence of some federal law.  Bar J argues neither
> that the Defendants violated a federal statute nor that the [contract's] validity
> requires the interpretation or application of any provision of the United States
> Code.

2005 WL 3663689, at *12 (internal citations omitted).  The Court concluded that, because the

plaintiff grounded its right to relief in "basic contract law," without "referencing any federal

- 13 -

law," the well-pleaded complaint did not raise an issue of federal law and, thus, the Court did not

have federal-question jurisdiction.  2005 WL 3663689, at *13.

In Olsen v. Quality Continuum Hospice, Inc, 380 F. Supp. 2d 1225 (D.N.M.

2004)(Browning, J.), the Court determined that the plaintiff's claims did not present any federal

questions; although the plaintiff asserted that the defendant violated the "United States Social

Security Act of 1965 [and] . . . the Medicare program,"[5] the Court concluded that those

provisions do not create a private right of action and, thus, did not create the plaintiff's causes of

action.  380 F. Supp. 2d at 1229.  The Court also determined that, because the plaintiff's causes

of action were essentially medical malpractice claims and arose under New Mexico common law

or New Mexico statutes, they would not depend on resolution of a question of federal law.  See

380 F. Supp. 2d at 1230-31.

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal

jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal

district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See

Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff

files in state court a civil action over which the federal district courts would have original

jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action

to federal court . . . ."  (quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68)).  Under 28 U.S.C.

§ 1331, a federal district court possesses original subject-matter jurisdiction over a case "arising

under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

_____

[5] Social Security Act of 1965, Pub. L. 89-97, 79 Stat. 286, and Medicare Prescription
Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, 117 Stat. 2066.

1.      **The Presumption Against Removal**.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.   See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co ., 683 F.2d 331, 333 (10th Cir. 1982); Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001); Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."   McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).   See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").   Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."   Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).[6]

---

[6] Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., Browning v. Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished), Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished), Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished),

On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  See McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *2 (D.N.M. February 9, 2010)(Browning, J.)(citing Bonadeo v. Lujan, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.").

### 2.    Procedural Requirements for Removal.

Section 1446 of Title 28 of the United States Code governs the procedure for removal.  "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty days from

Sheldon v. Khanal, 10-3237, 2012 WL 5860560 (10th Cir. Nov. 20, 2012)(unpublished), Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished), and Bloomer v. Norman Reg'l Hosp., 221 F.3d 1351, 2000 WL 963336, at *2 (10th Cir. 2000)(unpublished table decision), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[7]

---

[7] In 2011, Congress clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758 (2011).  See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. August 27, 2012)(Browning, J.).

On December 7, 2011, President Obama signed into law the Federal Courts Jurisdiction and Venue Clarification Act of 2011, which is intended to clarify the operation of federal jurisdictional statutes and facilitate the identification of the appropriate state or federal courts in which actions should be brought [see Pub. L. No. 112-63, 125 Stat. 758 (2011)].

. . . .

Section 103 of the Act makes several changes to removal and remand procedures.  28 U.S.C. § 1446 is amended to cover removal procedures for civil cases only; provisions governing removal of criminal prosecutions have been moved into new 28 U.S.C. § 1455 [Pub. L. No. 112-63, § 103(b), (c), 125 Stat. 758 (2011)].

Section 103 of the Act also amends 28 U.S.C. § 1441(c) to provide that, on the removal of any civil action with both removable claims and nonremovable claims (i.e., those outside of the original or supplemental jurisdiction of the district court), the district court must sever all nonremovable claims and remand them to the state court from which the action was removed.  The amendment also provides that only defendants against whom a removable claim has been asserted need to join in or consent to removal of the action. [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].

3.      __Amendment of the Notice of Removal__.

In __Caterpillar, Inc. v. Lewis__, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  __See__ 519 U.S. at 70-78.  Citing __Caterpillar, Inc. v. Lewis__, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court."  __Browning v. Am. Family__

---

Section 103 also amends 28 U.S.C. § 1446(b) to provide that, in a multi-defendant case, each defendant will have 30 days from his or her own date of service (or receipt of initial pleading) to seek removal.  Earlier-served defendants may join in or consent to removal by a later-served defendant [Pub. L. No. 112-63, § 103(a), 125 Stat. 758 (2011)].  These provisions are intended to resolve a circuit split over when the 30-day removal period begins to run in cases in which not all defendants are served at the same time [see H.R. Rep. No. 112-10, at 13-14 (2011); see, e.g., Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202 (11th Cir. 2008)(30-day period runs from date of service on last-served defendant, and earlier-served defendants may join in last-served defendant's timely removal); Marano Enters. v. Z-Teca Rests., LP, 254 F.3d 753 (8th Cir. 2011)(each defendant has 30 days to effect removal, regardless of when or if other defendants had sought to remove); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254 (5th Cir. 1988)(first-served defendant and all then-served defendants must join in notice of removal within 30 days after service on first-served defendant)].

Section 103 also enacts a new subdivision (c) of 28 U.S.C. § 1446, containing provisions governing the procedures for removal.  These include new authorization for a notice of removal in a diversity case to assert the amount in controversy if the initial pleading seeks (1) nonmonetary relief, or (2) a money judgment when state practice either does not permit a demand for a specific sum or permits the recover of damages in excess of the amount demanded.  Also part of a new subdivision (c) of 28 U.S.C. § 1446 is a provision allowing removal of a case based on diversity of citizenship more than one year after commencement of the action if the district court finds that the plaintiff acted in bad faith in order to prevent a defendant from removing the action (such as by deliberately failing to disclose the amount in controversy) [Pub. L. No. 112-63, § 103(b), 125 Stat. 758 (2011)].

Thompson v. Intel Corp., 2012 WL 3860748, at *12 n.5 (quoting 16 J. Moore, supra, at 107SA-1 to 107SA-2).

Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010)(unpublished).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship.  See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . .").  The Seventh Circuit nevertheless permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.   See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir. 2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96-3053, 96-3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W. R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present.").  The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts."  Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301

(10th Cir. 1968).  The Tenth Circuit has noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  See Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., No. CIV 09-0567 JB/LAM, 2010 WL 553443 (D.N.M. Feb. 9, 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)).  Further, in Thompson v. Intel Corp., this Court permitted the defendant, Intel Corp., to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects that an amended notice of removal may cure, however, as Professors Charles Alan Wright and Arthur R. Miller explain:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives:  It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount.  In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 C. Wright & A. Miller, Federal Practice and Procedure § 3733, at 651-659 (4th ed. 2009)(footnotes omitted).  Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction,

but not to add a new basis for removal jurisdiction."  16 J. Moore, D. Coquillette, G. Joseph, S. Schreiber, G. Vairo, & C. Varner, Moore's Federal Practice § 107.30[2][a][iv], at 107-317 to -18 (3d ed. 2013)("16 J. Moore").  Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.

    **4.**    **Consideration of Post-Removal Evidence.**

As the Court explained in Thompson v. Intel Corp., the Tenth Circuit looks to both evidence in the complaint, and submitted after the complaint, in determining whether the criteria necessary for removal are met.  See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956).  The Tenth Circuit explained in McPhail v. Deere & Co. that a district court may have evidence presented to a district court after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met.  See 529 F.3d at 593.  "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As the Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'"  Aranda v. Foamex Int'l, No. CIV 12-0405 JB/ACT, 2012 WL 2923183, at *18 (D.N.M. July 11, 2012)(Browning, J.)(quoting

- 21 -

Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).[8]  Thus, when determining if the

requirements for federal jurisdiction are met in a matter removed from state court, a district court

_____

[8] The Court has found that the language in McPhail v. Deere & Co., to some extent, conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence a district court may consider when determining its jurisdiction over a matter removed from state court:

> McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp..  In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made."  50 F.3d at 873.  In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint."  251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at *15.  The Court explained that, although there is some conflicting precedent within the Tenth Circuit on this matter, in light of the Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co., it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.  Aranda v. Foamex Int'l, 2012 WL 2923183, at *11-12.  Indeed, the Tenth Circuit admitted that its "opinions have not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail v. Deere & Co. was consistent with the Tenth Circuit's prior holdings and analysis.  McPhail v. Deere & Co., 529 F.3d at 954-55.  Describing its holding in Martin v. Franklin Capital Corp., in which the Tenth Circuit stated that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play, which the defendants in Martin failed to do."  McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original).  With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000."  McPhail v. Deere & Co., 529 F.3d at 955.  Furthermore, the notice of removal in Laughlin v. Kmart Corp. referred only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute."  Laughlin v. Kmart Corp., 50 F.3d at 873.  Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterized its holding as consistent with its prior decisions, and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case.  The Court thus finds that the Tenth Circuit's approach in Laughlin v. Kmart is "one of the most restrictive approaches to removal," and that the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met.  Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

may consider evidence submitted after removal.   See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.").

     **5.**     **Consent to Removal.**

     "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The last-served rule provides that each defendant has a right to remove within thirty days of service.  See 28 U.S.C. § 1446(b)(2)(B).  Remand is required if all of the defendants fail to consent to the petition for removal within the thirty-day period.  See Bonadeo v. Lujan, 2009 WL 1324119 at *6.  "The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district court remand the case." Brady v. Lovelace Health Plan, 504 F. Supp. 2d at 1172-73 (citing Cornwall v. Robinson, 654 F.2d 685, 686 (10th Cir. 1981)).

     Courts generally refer to the requirement that all defendants served at the time of filing must join in the notice of removal as the "unanimity rule."  McShares, Inc. v. Barry, 979 F. Supp. 1228, 1342 (D. Kan. 1997)(citations omitted).  The unanimity requirement, however, is excused under two circumstances: "First, a nominal or formal party is not required to join in the petition for removal.  Second, a defendant who has not yet been served with process is not required to join."  Brady v. Lovelace Health Plan, 504 F. Supp. 2d at 1173.

     The Tenth Circuit has held that a defendant's consent to removal was not necessary where he had not been served at the time another defendant filed its notice of removal.  See Sheldon v. Khanal, No. 10-3237, 2012 WL 5860560 (10th Cir. Nov. 20, 2012)(unpublished). In Sheldon v. Khanal, the plaintiff argued that the case should be remanded to state court, because

one of the defendants did not join the notice of removal.  See Sheldon v. Khanal, 2012 WL 5860560 at *4.  The Honorable Harris L. Hartz, United State Circuit Judge for the Tenth Circuit, stated: "We reject the argument as contrary to the clear statutory language requiring only served defendants to consent to removal."  Sheldon v. Khanal, 2012 WL 5860560 at *4.

The Court has stated: "[W]hile the federal courts strictly construe the removal statutes and there is a presumption against removal, the Court should not use these rules of construction to manufacture rules that Congress did not require, that are not necessary to enforce the statutes, and are contrary to normal federal practice."  Roybal v. City of Albuquerque, No. CIV 08-0181 JB/GBW, 2008 WL 5991063, at *8 (D.N.M. Sept. 24, 2008)(Browning, J.).  "Strict construction and resolving doubts against removal does not mean the courts should be hostile to the Congressionally created right to removal, creating procedural hurdles that Congress did not create and that provide pitfalls for all but the most experienced federal court litigants."  Tresco, Inc. v. Cont'l Cas. Co., 727 F. Supp. 2d 1243, 1255 (D.N.M. 2010)(Browning, J.).

In Tresco, Inc. v. Cont'l Cas. Co., the plaintiff filed suit against defendants National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Continental Casualty Company ("CNA").  727 F. Supp. 2d at 1245.  National Union filed a Notice of Removal with the federal court within thirty days of when it was served.  See 727 F. Supp. 2d at 1245.  Its Notice of Removal stated that National Union obtained CNA's consent to removal. See 727 F. Supp. 2d at 1245.  Thus, National Union obtained unanimity.  See 727 F. Supp. 2d at 1245.  The plaintiff moved the Court to remand, arguing that CNA did not indicate his consent by signing the notice of removal or by filing a separate document indicating consent within thirty days of the date that defendant was served.  See 727 F. Supp. 2d at 1245.  The Court denied the motion to remand, holding that neither the statute nor the Tenth Circuit requires a separate

signature or signed document to indicate consent.  See 727 F. Supp. 2d at 1245.  The Court

concluded that not requiring each defendant to either sign the removal petition or independently

submit a notice of consent in writing did not run counter to the principle that removal statutes be

strictly construed, with all doubts resolved against removal, because the statute is not ambiguous,

but silent.  See 727 F. Supp. 2d at 1255.  The statute does not require the rule that the plaintiff

requested.  See 727 F. Supp. 2d at 1255.  The Court concluded that, strictly construing the

statute, with no Tenth Circuit law to the contrary, a notice of removal can be effective without

individual consent documents from each defendant.  See 727 F. Supp. 2d at 1255.  The Court

recognized that federal courts often rely on representations of counsel without requiring separate

signed documents, and concluded that those representations are sufficient in the removal consent

context:

> "[F]ederal courts often rely on the representations of counsel about other
> parties. . . .  [P]arties frequently submit unopposed motions, stating that the other
> parties do not oppose.  Rarely is there any problem, and if there is, a federal court
> has an abundant reservoir of powers to remedy misrepresentations.
> Representations by counsel, signed under rule 11, are sufficient to deal with the
> primary concern animating the judicial creation of restrictions on removal."

727 F. Supp. 2d at 1250 (quoting Roybal v. City of Albuquerque, 2008 WL 5991063, at *8).

### LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited

jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal

courts "possess only that power authorized by Constitution and statute . . . ."  Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has

bestowed upon the courts is the power to hear controversies arising under federal law -- federal-

question jurisdiction -- and controversies arising between citizens of different states -- diversity

jurisdiction.  See 28 U.S.C. §§ 1331-32.

1.      **Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."   Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.[9]  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Ancillary jurisdiction gives federal courts the flexibility to "entertain[] a non-federal, non-diversity claim asserted by a party other than the plaintiff, usually in a diversity of citizenship case," although occasionally in admiralty cases as well.  See 13 C. Wright & A. Miller, Federal Practice & Procedure § 3523, at 173 & n.45. (3d ed. 2008).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at * 5 (D.N.M. November 21, 2011)(Browning, J.)(citing 16 J. Moore, supra, § 106.04[5], at 106-22.  In response to the Committee's findings regarding pendent and ancillary jurisdiction, Congress codified the application of the two doctrines when it

---

[9] The Tenth Circuit has noted that Congress' intent in passing 28 U.S.C. § 1367 was to supersede the common-law doctrine of pendent jurisdiction: "Effective December 1, 1990, Congress enacted legislation, codified at 28 U.S.C. § 1367 (1976 & Supp. 1992), which supersedes the common law pendent jurisdiction doctrine."  Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 634 (10th Cir. 1993)(citing Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992), and Aschinger v. Columbus Showcase Co., 934 F.2d 1402 (6th Cir. 1991)).

passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence." Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

> **2.**      **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1)      the claim raises a novel or complex issue of State law,
>
> (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)    the district court has dismissed all claims over which it has original
       jurisdiction, or

(4)    in exceptional circumstances, there are other compelling reasons for
       declining jurisdiction.

28 U.S.C. § 1367(c).   In applying these factors, district courts should seek to exercise

supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness,

and comity . . . ."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

       Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the

district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions

of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian

News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir.1998)("[S]ection 1367 has

indeed altered Gibbs' discretionary analysis.");  McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir.

1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims

only in the four instances described therein.");  Executive Software N. Am. v. U.S. Dist. Court,

24 F. 3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in

subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be

triggered by the court's identification of a factual predicate that corresponds to one of the section

1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.,

533 F.3d 1087 (9th Cir. 2008);  Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir.

1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of

section 1367(c) . . . .")(emphasis in original);  Bonadeo v. Lujan, No. CIV 08–0812 JB/ACT,

2009 WL 1324119, at *8 (D.N.M. April 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed

the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining

jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  At least one other

district court in the Tenth Circuit besides this Court has reached the same conclusion.  See

Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow,

J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot

occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should generally decline jurisdiction over

state claims when federal claims no longer remain: "When all federal claims have been

dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining

state claims."  Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v.

City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme

Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and
> to promote justice between the parties, by procuring for them a surer-footed
> reading of applicable law.  Certainly, if the federal claims are dismissed before
> trial, even though not insubstantial in a jurisdictional sense, the state claims
> should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. at 726.  The Tenth Circuit has recognized that a district

court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over

a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has

original jurisdiction[.]'"   Muller v. Culbertson, 408 F. App'x 194, 197 (10th

Cir. 2011)(unpublished).  The Court has previously stated that a district court should usually

decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  See Armijo v.

New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning,

J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they

have encouraged it.").

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Supreme Court has construed the immunity articulated in the Eleventh Amendment to prohibit federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent.  See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  State agencies and state officials are likewise provided immunity as "an arm of the state."  Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977).

### 1.      Exceptions to Eleventh Amendment Immunity.

Exceptions to a state's Eleventh Amendment immunity are few.  A state may, however, voluntarily waive its immunity.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974).  Congress may also abrogate Eleventh Amendment immunity pursuant to section 5 of the Fourteenth Amendment to the Constitution of the United States, where the statute explicitly manifests Congress' intent to do so.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  Congress did not, however, abrogate Eleventh Amendment immunity when enacting 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 340 (1979).  Consequently, Eleventh Amendment immunity extends to defendants under that statute, and claims pursuant thereto in the federal courts are barred as a matter of law.

### 2.      Removal as a Waiver of Sovereign Immunity.

When a state removes a case to federal court, it invokes federal jurisdiction and waives Eleventh Amendment immunity.  In Lapides v. Board of Regents, the Supreme Court held that

"removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum."  535 U.S. at 624.  The Supreme Court noted: "[I]t is easy enough to presume that an attorney authorized to represent the State can bind it to the jurisdiction of the federal court (for Eleventh Amendment purposes) by the consent to removal."  535 U.S. at 624 (internal quotation marks omitted).

While Lapides v. Board of Regents was arguably limited to the context of state law claims for which the state had explicitly waived immunity to suit in state court, the United States Court of Appeals for the Tenth Circuit has held that consent to remove a case to federal court also constitutes waiver in the context of federal claims.  See Estes v. Wyoming Dep't of Transp., 302 F.3d 1200, 1206 (2002).  In other words, when a state removes federal-law claims from state court to federal court, the state unequivocally invokes the jurisdiction of the federal court.  See Estes v. Wyoming Dep't of Transp., 302 F.3d at 1206.

In Abreu v. N.M. Children, Youth & Families Dep't, the Court addressed the issue "whether removal constitutes a waiver of immunity if private attorneys, representing state agencies or officials, rather than the state's Attorney General, carry out removal."  646 F. Supp. 2d at 1264.  The Court determined that, "at least where counsel for the state agency are authorized to carry out the representation, their act of removing a case to federal court will be sufficiently authoritative to constitute a waiver of Eleventh Amendment immunity."  646 F. Supp. 2d at 1264.  The Court explained that, in Lapides v. Board of Regents, the Supreme Court "framed and decided the issue without reference to whether the state agency's counsel must be the Attorney General."  Abreu v. N.M. Children, Youth & Families Dep't, 646 F. Supp. 2d at 1265.  Reviewing the cases on which the Supreme Court relied in Lapides v. Board of Regents, the Court noted that the focus was not on the identity of the officer or on whether the officer had

- 31 -

the authority to waive immunity, but "was on the right to represent the state in the matter in question." Abreu v. N.M. Children, Youth & Families Dep't, 646 F. Supp. 2d at 1267. "In sum, if the Defendants' counsel has the authority, under state law, to represent the Defendants -- who are state agencies -- then counsel may waive the Eleventh Amendment immunity defense by consenting to remove this case to federal court." 646 F. Supp. 2d at 1268. Turning to whether the defendants' counsel had such authority, the Court noted that the agency -- Risk Management, a division of the General Services Department -- had the statutory authority to hire legal counsel, and that the agency's advisory board includes the Attorney General or his designee; thus, "the Risk Management Division does not operate totally divorced from the Attorney General's authority and supervision." 646 F. Supp. 2d at 1268. The Court determined that the agency's private counsel were authorized to represent the agency and could waive Eleventh Amendment immunity on behalf of the agency. See 646 F. Supp. 2d at 1268. Additionally, the agency's counsel obtained a commission from the Attorney General, which indicated that the Attorney General consented "not only to private counsels' representation in this case, but to their litigating the case in federal court." 646 F. Supp. 2d at 1269. Counsel in that case also "agreed to obtain the Attorney General's express waiver of the State's Eleventh Amendment immunity." 646 F. Supp. 2d at 1270. The Court determined that New Mexico had validly waived its Eleventh Amendment immunity, exercised jurisdiction, and denied the motion to remand in that case. See 646 F. Supp. 2d at 1270.

In Armijo v. State, Department of Transportation, the Court again held that a state department waives Eleventh Amendment immunity by consenting to remove the case to federal court. See 2009 WL 1329192, at *4. Noting that "[n]either party has contended that the attorney representing the Department lacks authority to represent the Department in this case," the Court

said it "presumes the representation is valid and finds that counsel had the authority to remove this case to federal court."  2009 WL 1329192, at *5.

**ANALYSIS**

The Court will deny the Motion for Remand, because, by removing the case, the UNM Defendants waived Eleventh Amendment immunity.  The Court has federal-question jurisdiction over the Plaintiffs' claims under EMTALA.  Moreover, the Court has supplemental jurisdiction to hear the remaining claims, because they form the same case or controversy as the EMTALA claim.

**1.    THE UNM DEFENDANTS WAIVED ELEVENTH-AMENDMENT IMMUNITY BY REMOVING THIS CASE TO FEDERAL COURT.**

The immunity articulated in the Eleventh Amendment prohibits federal courts from entertaining suits against states that their own citizens or citizens of another state bring without their consent.  See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. at 304.  State agencies are likewise provided immunity as "an arm of the state."  Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81.  "The Board of Regents of the University of New Mexico is an arm of the State of New Mexico," and thus, the UNM Defendants are "clothed with Eleventh Amendment Immunity."  Ward v. Presbyterian Healthcare Servs., 72 F. Supp. 2d at 1289-90 (citing Mascheroni v. Bd. of Regents of the Univ. of Calif., 28 F.3d 1554, 1559 (10th Cir. 1994), abrogated on other grounds by Boyer v. Cordant Techs., Inc., 316 F.3d 1137 (10th Cir. 2003); In re Innes, 184 F.3d 1275, 1277 (10th Cir. 1999)).  The Court does not have jurisdiction to hear a damages suit against the UNM Defendants, unless an exception to the Eleventh Amendment immunity applies.

In this case, the UNM Defendants removed the case to federal court.  "[R]emoval is a

form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." Lapides v. Bd. of Regents, 535 U.S. at 624.  This Court has held that, "if the Defendants' counsel has the authority, under state law, to represent the Defendants -- who are state agencies -- then counsel may waive the Eleventh Amendment immunity defense by consenting to remove this case to federal court." Abreu v. N.M. Children, Youth and Families Dep't, 646 F. Supp. 2d at 1268.  In breu v. New Mexico Children, Youth & Families Department, the Court addressed whether risk-management attorneys representing a state entity could waive sovereign immunity by removing a case to federal court, or whether the state Attorney General must effect the removal for a waiver of immunity to be valid.  See 646 F. Supp. 2d at 1264.  The Court stated: "Given that the attorneys are authorized, under state law, to represent the Defendants in this case, those attorneys' act of removing the case to federal court is a valid invocation of federal jurisdiction."  646 F. Supp. 2d at 1268.

        In light of the Plaintiffs' concern about the Tenth Circuit's decision in Garcia v. Board of Education, in which the Tenth Circuit permitted the board of education to raise Eleventh Amendment immunity on appeal, see 777 F.2d at 1406, the Court has asked counsel for the UNM Defendants to provide their commission from the Attorney General to demonstrate that they are authorized to represent the UNM Defendants and, further, to obtain approval from the Attorney General to waive Eleventh Amendment immunity in this case, see Tr. at 7:7-14 (Court). Counsel for the UNM Defendants represented at the hearing that they would be able to obtain both items, see Tr. at 7:15-18 (Narvaez), and the Plaintiffs were in accord with removal based on those assurances, see Tr. at 7:4-6 (Barela); although those documents have not yet been filed, the

- 34 -

Court trusts that they are forthcoming.[10]   Because counsel for the UNM Defendants have authority to represent the UNM Defendants, their act of removing the case to federal court waived the UNM Defendants' Eleventh Amendment immunity.

## II.   THE COURT HAS FEDERAL-QUESTION JURISDICTION OVER THE PLAINTIFFS' EMTALA CLAIM AGAINST THE UNM DEFENDANTS.

The Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Plaintiffs' second claim for relief alleges that the Defendants were negligent *per se* by violating EMTALA, a federal statute that permits private enforcement.  See SAC ¶¶ 38-43, at 7-8.

> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(2)(A).   "Congress enacted EMTALA 'to create a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat' and not to 'duplicate preexisting legal protections.'"  Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1168-69 (9th Cir. 2002)(quoting Gatewood v. Wash. Healthcare Corp., 933 F.2d 1037, 1041 (D.C. Cir. 1991)).

> Under EMTALA, a participating hospital has two primary obligations.  First, the hospital must conduct an initial medical examination to determine whether the patient is suffering from an emergency medical condition.  The second obligation requires the hospital, if an emergency medical condition exists, to stabilize the patient before transporting him or her elsewhere.  To ensure compliance with these obligations, Congress created a private cause of action.

---

[10] On Friday, January 3, 2013, the UNM Defendants informed the Court's Courtroom Deputy that the Attorney General wanted additional information about the case, but said they anticipate they will still be able to obtain the assurances.

Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 796 (10th Cir. 2001)(internal footnote and citations omitted).  See also Bloomer v. Norman Reg'l Hosp., 221 F.3d 1351, 2000 WL 963336, at *2 (10th Cir. 2000)(unpublished table decision)(holding that the district court should not have dismissed the plaintiff's EMTALA claims under rule 12(b)(1) of the Federal Rules of Civil Procedure, but should have converted the defendant's motion into a "merits-based motion under Rule 12(b)(6) or Rule 56(c)").

EMTALA's language, while it refers to the law of the State, creates a federal cause of action.  While a plaintiff can get only the damages available for personal injury under the law of the State in which the hospital is located, all other elements appear governed by federal law.  The cause of action is similar to a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"); in enacting the FTCA, Congress defined the terms and conditions under which the United States may be sued in tort:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be held liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  As the Supreme Court explained, damages under the FTCA are determined by the law of the state where the tortious act was committed.  See Hatahley v. United States, 351 U.S. 173, 182 (1956).  Not only is the FTCA a federal cause of action, it presents a federal question that can only be brought in federal court.  See 28 U.S.C. § 1346(b).  Here, EMTALA claims present a federal question, and a federal court has federal jurisdiction over it.  Indeed, none of the parties suggest that the Court does not have federal-question jurisdiction, or that the

court does not have subject-matter jurisdiction over the case.  The plaintiff's only argument is that the Eleventh Amendment immunity precludes the Court from exercising jurisdiction.

The Plaintiffs allege that the "Defendants violated the EMTALA, 'The Anti-Dumping Act', by refusing to treat and stabilize Plaintiff Samayoa over a period of three days before transferring him to another facility without his or Plaintiff Williams' consent."  SAC ¶ 40, at 7. The Plaintiffs' EMTALA claim is likely directed toward the UNM Psychiatric Center emergency services and the UNM Hospital Behavioral Health Programs, for their actions between February 5, 2011 -- when the Belen Police Department took Samayoa to the UNM Psychiatric Center -- and February 8, 2011 -- when the UNM Hospital Behavioral Health Programs "advised they were ready to transfer Plaintiff Samayoa to their unit, but instead, transported him to Mesilla Valley Hospital in Las Cruces, New Mexico, without Plaintiff Williams' consent and against her wishes."   SAC ¶¶ 23-25, at 5. The Plaintiffs' EMTALA claim meets the requirements for federal-question jurisdiction: it is a federal cause of action and it appears "on the face of plaintiff's well-pleaded complaint," and the cause of action is "created by federal law." Nicodemus v. Union Pac. Corp., 318 F.3d at 1235.   The Court has jurisdiction over the EMTALA claim pursuant to 28 U.S.C. §§ 1331 and 1441(a).

## III.   THE COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS, BECAUSE THEY FORM THE SAME CASE OR CONTROVERSY AS THE EMTALA CLAIM.

Because the Court has original jurisdiction over the Plaintiffs' EMTALA claim, the Court has supplemental jurisdiction over "all other claims that are so related . . . that they form part of the same case or controversy under Article III of the United States Constitution.   Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."   28 U.S.C. § 1367(a).   As the Supreme Court explained in United Mine

- 37 -

Workers v. Gibbs,

> [t]he state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is <u>power</u> in federal courts to hear the whole.

383 U.S. at 725, (emphasis original).  The test is broader, and thus encompasses, the same "transaction or occurrence" test often used in the Federal Rules of Civil Procedure, such as for rule 20, which permits joining multiple plaintiffs or defendants in a single case.

> [N]o one disputes that the <u>Gibbs</u> standard, and therefore § 1367(a), embraces claims that arise from the same transaction or occurrence as the underlying dispute.  But it is error to equate the two.  The <u>Gibbs</u> 'common nucleus' test is broader than the 'transaction or occurrence' test used in the Civil Rules.

13D C. Wright, A. Miller, E. Cooper, & R. Freer, <u>Federal Practice and Procedure</u> § 3567.1, at 349 (3d ed. 2008).  "In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection."  13D C. Wright, A. Miller, E. Cooper, & R. Freer, <u>supra</u>, § 3567.1, at 349.

Several of the Plaintiffs' claims in this case arise from identical facts as those involved in the federal claim: the Plaintiffs assert that, between February 5 and 8, 2011, the UNM Defendants violated EMTALA by not treating and stabilizing him before transferring him to a new facility, <u>see</u> SAC ¶ 40, at 7, and further assert that this conduct constitutes intentional infliction of emotional distress, <u>see</u> SAC ¶ 50(c)-(d), at 9, and negligent infliction of emotional distress, <u>see</u> SAC ¶ 55(c)-(d), at 10, which in part contributes to the loss of consortium claim, <u>see</u> SAC ¶¶ 60-64, at 11.  Because these claims arise from identical facts, they meet § 1367's requirement of forming "part of the same case or controversy."  18 U.S.C. § 1367(a).

Many of the other claims arise from the events that took place between January 19 and

26, 2011: the Plaintiffs allege that the UNM Defendants were medically negligent by denying Samayoa treatment and instead having him arrested, <u>see</u> SAC ¶ 35, at 7, and that this conduct further constitutes intentional infliction of emotional distress, <u>see</u> SAC ¶50(a)-(b), and negligent infliction of emotional distress, <u>see</u> SAC ¶ 55(a)-(b), at 10, contributing to the loss of consortium claim, <u>see</u> SAC ¶¶ 60-64, at 11.   The Plaintiffs allege that the BCMDC and Correctional Healthcare were "negligent in their care and treatment of Plaintiff Samayoa by placing him in the general population and denying him access to their specialized services and by not providing him the medications they were aware he needed for his illness," SAC ¶ 46, at 8, that this conduct constitutes intentional infliction of emotional distress, <u>see</u> SAC ¶ 51, at 9, and negligent infliction of emotional distress, <u>see</u> SAC ¶ 56, at 10, and contributes to the loss of consortium claim, SAC ¶¶ 60-64, at 11.   Although these additional claims do not arise out of identical facts and occurred earlier in time than the events leading to the federal claim, they nonetheless form part of the same case or controversy as the federal claim, because it is all these events together that the Plaintiffs allege led to their injuries and damages.   It appears that the Plaintiffs' injuries are indivisible and the actions of the Defendants, although occurring on different dates, should be tried together to determine which, if any, Defendants contributed to the Plaintiffs' injuries and to what extent.   The Court has supplemental jurisdiction over the remaining claims and does not see a sound basis for declining to exercise that jurisdiction.

   **IT IS ORDERED** that the Plaintiffs' Motion for Remand of Claims Against the Board of Regents of the University of New Mexico and the Bernalillo County Metropolitan Detention Center with Supporting Points and Authorities, filed June 24, 2013 (Doc. 16), is denied.

                                   _____
                                   UNITED STATES DISTRICT JUDGE

*Counsel*:

Elias Barela
Los Lunas, New Mexico

   *Attorney for the Plaintiffs*

Bryan C. Garcia
Henry F. Narvaez
Narvaez Law Firm, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendants Board of Regents of the University of New Mexico, University
   of New Mexico Health Sciences Center, University of New Mexico School of Medicine,
   University of New Mexico Hospital Behavioral Health Programs, and the University of
   New Mexico Psychiatric Center*

Carlos M. Quinones
Quinones Law Firm
Santa Fe, New Mexico

   *Attorney for Defendant Bernalillo County Metropolitan Detention Center*

Alfred A. Park
Lawrence M. Marcus
Park & Associates, LLC
Albuquerque, New Mexico

   *Attorneys for Defendant Correctional Healthcare Companies, Inc.*