## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TEDDIE WILLIAMS, Individually and as
Parent and Next Friend of Rainan Samayoa;
RAINAN SAMAYOA, a Mentally Challenged
Person; and MARIA CONTRARAS,
Conservator & Guardian of Rainan Samayoa,

       Plaintiffs,

vs.                                                                              No. CIV 13-0479 JB/WPL

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, a body
corporate of the State of New Mexico, for itself
and its public operations including
UNIVERSITY OF NEW MEXICO HEALTH
SCIENCES CENTER and its components the
UNIVERSITY OF NEW MEXICO SCHOOL
OF MEDICINE, UNIVERSITY OF NEW
MEXICO HOSPITAL BEHAVIORAL
HEALTH PROGRAMS, UNIVERSITY OF
NEW MEXICO PSYCHIATRIC CENTER,
BERNALILLO COUNTY METROPOLITAN
DETENTION CENTER, and
CORRECTIONAL HEALTHCARE
COMPANIES, INC., a foreign corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant the Board of County

Commissioners of the County of Bernalillo's Motion to Dismiss Plaintiffs' Claims Against

Bernalillo County Metropolitan Detention Center, filed January 3, 2014 (Doc. 48)("MTD"). The

Court held a hearing on February 12, 2014. The primary issues are: (i) whether Defendant Board

of County Commissioners of the County of Bernalillo[1] ("Bernalillo County") has waived its

_____

[1] The Plaintiffs erroneously name the Bernalillo County Metropolitan Detention Center,

sovereign immunity with respect to claims of simple negligence; (ii) whether Bernalillo County has waived its sovereign immunity with respect to claims of negligent classification or placement; and (iii) whether Bernalillo County has waived its sovereign immunity with respect to claims of negligent supervision.  After examining the waivers of immunity in the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 to -30 ("NMTCA"), the Court concludes that none of these claims fall within the enumerated waivers, and Bernalillo County is entitled to immunity with respect to all of the Plaintiffs' remaining claims.  For that reason, the Court grants the MTD in its entirety, dismisses all claims against Bernalillo County with prejudice, and terminates Bernalillo County from the case.

## FACTUAL BACKGROUND

The Court takes its facts from the Second Amended Complaint for Damages and Medical Negligence, filed November 26, 2013 (Doc. 30)("SAC").  In 2010, Plaintiff Rainan Samayoa was twenty-five years old and "already had a very significant psychiatric history including a traumatic brain injury."  SAC ¶ 13, at 3.  On July 3, 2010, Plaintiff Teddie Williams, Samayoa's mother, took Samayoa to the University of New Mexico Psychiatric Center emergency services, because he had symptoms of disorganized behavior; he was admitted to the University of New Mexico Hospital Behavioral Health Programs and discharged on August 2, 2010.  See SAC ¶¶ 14, at 3.  During his stay at the UNM Hospital Behavioral Health Programs and subsequent visits through February 8, 2011, Samayoa was diagnosed with chronic schizophrenia, paranoid

not the Board of County Commissioners, as Defendant.  Because the "BCDC is similar to a police department in that it is . . . subsumed within the larger municipality," it "lack[s a] legal identit[y] apart from the municipality," and the "Plaintiff[s], thus, cannot sue BCDC."  Ketchum v. Albuquerque Police Dep't, 958 F.2d 381, at *2 (10th Cir. 1992)(unpublished)(citing Martinez v. Winner, 771 F.2d 425, 443 (10th Cir. 1985)).  The Court will restyle the Plaintiffs' allegations against the Board of County Commissioners, and refer to Plaintiffs' claims as such throughout this Memorandum Opinion and Order.

ideation, intermittent explosive disorder, auditory hallucinations, post-traumatic stress disorder, borderline intellectual disorder, and traumatic brain injury.  See SAC ¶ 15, at 3-4.  When he was released from the UNM Hospital Behavioral Health Programs, his "mental condition had stabilized to the point he could hold meaningful conversations with his mother, Plaintiff Williams.  He could function mentally within limitations and was not a harm to himself or others."  SAC ¶ 16, at 4.

On January 19, 2011, Samayoa exhibited "psychiatric behavioral problems including disorientation, confusion, depression and aggression" while he was at Valencia Counseling in Los Lunas, New Mexico; he was transported to the UNM Psychiatric Center emergency services. SAC ¶ 17, at 4.  The UNM Hospital Behavioral Health Programs staff evaluated Samayoa and determined that he should be admitted for safety and stabilization; Samayoa was admitted involuntarily.  See SAC ¶ 18, at 4.  "A few minutes later, Plaintiff Samayoa allegedly assaulted two staff members.  Instead of treating his conduct which was consistent with his mental disorder, staff involved the UNM Police Department and ultimately had Plaintiff Samayoa discharged to the custody of the Albuquerque[, New Mexico,] Police Department . . . ."  SAC ¶ 19, at 4.  While he was incarcerated, Samayoa was not given his psychotropic medications, "even though [Defendants Correctional Healthcare Companies, Inc. and Bernalillo County Metropolitan Detention Center ("BCMDC")] staff were aware he was very ill and had been on suicide watch at [the UNM Hospital Behavioral Health Programs]."[2]  SAC ¶¶ 21, at 4-5.

---

[2] The SAC states that Samayoa had been on suicide watch at "UNMH."  While the SAC does not define that acronym, it most likely refers to the UNM Hospital, which is commonly called UNMH in the area.  In any case, the Court believes that the Plaintiffs intended to state more specifically that Samayoa had been on suicide watch at the UNM Hospital Behavioral Health Programs, which the Plaintiffs abbreviate as "UNMHBHP"; the Plaintiffs may have also intended the University of New Mexico Health Sciences Center, which they abbreviate as

Samayoa was incarcerated until January 26, 2011, and then transported back to the UNM Hospital Behavioral Health Programs.  See SAC ¶ 20, at 4.

On February 5, 2011, Samayoa called 911, stating that he wanted to kill himself; the Belen, New Mexico, Police Department took Samayoa to the UNM Psychiatric Center[3] emergency services.  See SAC ¶ 23, at 5.  The UNM Hospital Behavioral Health Programs evaluated Samayoa after he spent about fifty-two hours in the emergency services and determined that "his actions were inappropriate, that he had become progressively worse since incarceration and planned to transfer him from [the UNM Psychiatric Center] emergency services to [the UNM Hospital Behavioral Health Programs] as soon as a bed was available for him (in-patient care)."  SAC ¶ 24, at 5.  On February 8, 2011, the UNM Hospital Behavioral Health Programs had a unit available, "but instead, transported [Samayoa] to Mesilla Valley Hospital in Las Cruces, New Mexico, without Plaintiff Williams' consent and against her wishes."  SAC ¶ 25, at 5.  The Mesilla Valley Hospital assessed that Samayoa was a danger to himself and others, and diagnosed him with a psychotic disorder and a traumatic brain injury.  See SAC ¶ 26, at 5.  Samayoa stayed at Mesilla Valley Hospital until February 24, 2011, and was then transferred to New Mexico Behavioral Health in Las Vegas, New Mexico, where he stayed until he was discharged on April 21, 2011, and ultimately diagnosed with intermittent explosive disorder, psychotic disorder, and a traumatic brain injury.  See SAC ¶¶ 26-27, at 5-6.

---

"UNMHSC."  SAC ¶¶ 5, 7, at 2; id. ¶ 21, at 5.

[3] In paragraph 23 of the SAC, the Plaintiffs state that the Belen Police Department took the Defendant to "UNMPS emergency services."  SAC ¶ 23, at 5.  The Court believes the Plaintiffs intended to write "UNMPC," which is their abbreviation for the UNM Psychiatric Center.  SAC ¶ 8, at 2.

After these events, Samayoa "has not regained enough mental stability to hold any degree of meaningful conversations with his mother, Plaintiff Williams, or anyone else.  He has remained in a volatile mental state and is periodically dangerous to himself and to others."  SAC ¶ 28, at 6.

## PROCEDURAL BACKGROUND

The Plaintiffs allege six claims in the SAC: (i) a claim of medical negligence, in which Bernalillo County is clearly not named, see SAC ¶¶ 33-37, at 6-7 (not mentioning Bernalillo County or "BCMDC," the acronym the Plaintiffs use for Bernalillo County in their briefing); (ii) a claim of negligence per se for failure to comply with the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, in which Bernalillo County is clearly not named, see SAC ¶¶ 38-43, at 7-8 (not mentioning BCMDC); (iii) a claim of negligence, in which Bernalillo County appears to be named, see SAC ¶¶ 44-48, at 8 (alleging that Bernalillo County "w[as] under a duty," "did nothing," "w[as] negligent," and "w[as] the cause of injuries and damages"); (iv) a claim of intentional infliction of emotional distress, in which Bernalillo County appears to be named, see SAC ¶¶ 49-53, at 8-9 (alleging that Bernalillo County's "conduct . . . was extreme and outrageous," "[t]hey acted intentionally and recklessly," and "[a]s a result of the[ir] conduct . . . Plaintiffs experienced severe emotional distress causing injuries and damages"); (v) a claim of negligent infliction of emotional distress, in which Bernalillo County appears to be named, see SAC ¶¶ 54-58, at 9-11 (making identical allegations as the claim of intentional infliction of emotional distress with respect to Bernalillo County); and (vi) a claim for loss of consortium, in which Bernalillo County appears to be named, see SAC ¶¶ 59-64, at 11 (alleging that Bernalillo County "caused repeated injuries to Plaintiff Samayoa's mental state and stability through [its] actions or failures to act to the point he lost the ability to communicate rationally with his own mother").

1.     **Bernalillo County Files the MTD.**

Bernalillo County filed the MTD arguing for the dismissal of the four claims (claims three through six) in which Bernalillo County believes it is named.  See MTD at 4-9.  After outlining the rule 12(b)(6) standard, see MTD at 3-4 (citing Fed. R. Civ. P. 12(b)(6)), Bernalillo County focuses all its arguments on the NMTCA, contending that "'[t]he right to sue state defendants is limited to those rights and conditions expressly presented in the [Tort Claims] Act,'" MTD at 4 (second alteration in original)(quoting Begay v. State, 104 N.M. 483, 487, 723 P.2d 252, 256 (Ct. App. 1985), rev'd on other grounds, 104 N.M. 375, 721 P.2d 1306 (1986)).  Bernalillo County argues that none of the Plaintiffs' claims fit into any of the waivers of sovereign immunity enumerated in the statute, and, thus, the Court must dismiss them all.  Bernalillo County analyzes the claims under N.M. Stat. Ann. § 41-4-12, which applies to law enforcement officers.  It argues that Metropolitan Detention Center officers

> are considered "law enforcement officers" under this Section as, under New Mexico law, a correctional officer at a detention center in which inmates are primarily "accused of a criminal offense" and awaiting trial (in contrast to inmates convicted of a criminal offense) fall within the definition of "law enforcement officer" under the TCA.

MTD at 5 n.1 (quoting Davis v. Bd. of Cnty. Comm'rs of Dona Ana Cnty., 1999-NMCA-110, ¶ 35, 127 N.M. 785, 796, 987 P.2d 1172, 1183).

Bernalillo County first argues that "there is no waiver of tort immunity for negligence, standing alone."  MTD at 4 (citing Lessen v. City of Albuquerque, 2008-NMCA-085, 187 P.3d 179).  It contends that "the TCA does not waive immunity for law enforcement officers for simple negligence, but only for negligence that causes an enumerated tort or violation of rights for which immunity is waived in the TCA."  MTD at 5.  Bernalillo County also argues that one of the more specific theories of liability asserted under the umbrella of negligence, "negligent

placement/classification," see SAC ¶ 46, at 8, has been specifically ruled out as a viable cause of action by the New Mexico state courts.  See MTD at 5-6.  It cites Archibeque v. Moya, in which it asserts that the Supreme Court of New Mexico answered a certified question from the United States Court of Appeals for the Tenth Circuit -- "'Does [§ 41-4-6 of the NMTCA] provide immunity from tort liability to an employee of the state penitentiary whose alleged negligence in releasing a prisoner into the general prison population, which included known enemies of the prisoner, resulted in the prisoner being beaten and injured by one of his enemies?'" MTD at 6 (quoting 116 N.M. 616, 617-18, 866 P.2d 344 (1993)) -- with the response being that "there was no such waiver of immunity," MTD at 6.  Bernalillo County asserts that this result was consistent with two other cases, Wittkowski v. State, 103 N.M. 526, 529, 710 P.2d 93, 96 (Ct. App. 1985), and Gallegos v. State, 107 N.M. 349, 351, 758 P.2d 299, 301 (Ct. App. 1987).  It also asserts that plaintiffs often try to argue that the waiver provisions of § 41-4-6 apply, as that section waives immunity for ordinary "negligence of public employees while acting within the scope of their duties."  N.M. Stat. Ann. § 41-4-6.  See MTD at 6.  It argues that the courts have refused to recognize § 41-4-6 claims against law enforcement officers, because that section waives immunity only for "'injuries . . . [that] occur[red] due to a physical defect in a building.'"  MTD at 6 (quoting Wittkowski v. State, 103 N.M. at 530, 710 P.2d at 97).

Bernalillo County also addresses the SAC's claims of medical negligence, see MTD at 7, intentional and negligent infliction of emotional distress, see MTD at 7-8, and loss of consortium, see MTD at 8-9.  The Court will not summarize these arguments, as the Plaintiffs subsequently clarified that they are not asserting those claims against Bernalillo County.

2.     __The Plaintiffs Respond to the MTD.__

The Plaintiffs responded eighteen days later.  See Plaintiffs' Response to Defendant the Board of County Commissioners of the County of Bernalillo's Motion to Dismiss Plaintiffs' Claims Against Bernalillo County Metropolitan Detention Center, filed January 21, 2014 (Doc. 59)("Response").   After a lengthy factual background, see Response at 1-8, and an outlining of the rule 12(b)(6) standard, see Response at 8-9, the Plaintiffs then clarified which of their claims they were alleging against Bernalillo County.  "Plaintiffs state they are only bringing claims for medical negligence, intentional infliction/negligent infliction of emotional distress, and loss of consortium against Defendant UNM Psychiatric Center and Defendant CHC and not against Defendant County."  Response at 9 (title case omitted).  See Response at 12-14.  The Plaintiffs, therefore, assert only the following claims against Bernalillo County: (i) "negligence"; (ii) "negligent placement/classification"; and (iii) "negligent supervision."  Response at 9 (title case omitted).  The Plaintiffs attempt to justify bringing these three claims against Bernalillo County.

"[A]s a threshold matter, Plaintiffs' [sic] agree the New Mexico Tort Claims Act's Section 41-4-12, is applicable to Defendant County because their BCMDC officers are considered 'law enforcement officers' under the TCA."  Response at 9.  The Plaintiffs first argue that their negligence claim is viable and attempt to distinguish Archibeque v. Moya, 1993-NMSC-079, 116 N.M. 616, 866 P.2d 344.  They contend that "_Archibeque v. Moya_ is easily distinguished because the analysis in that case was under Section 41-4-6, the 'maintenance of a building' portion of the TCA, and not under Section 41-4-12, which is applicable in this case."  Response at 10.  The Plaintiffs cite Methola v. County of Eddy, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980), for the proposition that "the New Mexico Legislature intended 'caused by'

in Section 41-4-12 to include those acts enumerated in that section which were caused by the **negligence** of law enforcement officers while acting within the scope of their duties." Response at 10 (emphasis in original). They quote the Supreme Court of New Mexico's language that, "'[w]hen one party is in the custodial care of another, as in the case of a jailed prisoner, the custodian has the duty to exercise reasonable and ordinary care for the protection of the life and health of the person in custody.'" Response at 10 (alteration in original)(quoting City of Belen v. Harrell, 93 N.M. 601, 603, 603 P.2d 711, 713 (1979)). They also cite Weinstein v. City of Santa Fe, 1996-NMSC-021, 121 N.M. 646, 916 P.2d 1313, and Cross v. City of Clovis, 107 N.M. 251, 253, 755 P.2d 589, 591 (1988), for essentially the same proposition.

3.     **Bernalillo County Replies to the Plaintiffs' Response.**

Bernalillo County replied to the Response ten days later. See Reply to Plaintiffs' Response to Defendant the Board of County Commissioners of the County of Bernalillo's Motion to Dismiss Plaintiffs' Claims Against Bernalillo County Metropolitan Detention Center, filed January 31, 2014 (Doc. 65)("Reply"). It first requests the Court to formally dismiss the claims against it -- for medical negligence, intentional and negligent infliction of emotional distress, and loss of consortium -- that the Plaintiffs say they never intended to bring against it. See Reply at 2. Bernalillo County asserts that "these distinctions are not made clear in Plaintiffs' pleadings, where Plaintiffs essentially lump all claims against all Defendants." Reply at 2.

Bernalillo County attacks the Plaintiffs' claim of simple negligence, arguing that, "[u]nder New Mexico law, it is the plaintiff's burden to identify the specific statutory section that waives immunity and to then demonstrate that the facts alleged fit within one of the exceptions." Reply at 3 (citing Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987)). It quotes § 41-4-12, noting that negligence is not mentioned, and contends that "'it

is well established in New Mexico' that there is no waiver of immunity for negligence standing alone under § 41-4-12. . . . '[I]f the Legislature had intended to include other acts or the tort of simple negligence, it could have done so.'"   Reply at 3 (quoting Dickson v. City of Clovis, 2010-NMCA-058, ¶¶ 18-19, 242 P.3d 398, 403).   It also cites Lessen v. City of Albuquerque, 2008-NMCA-085, 187 P.3d 179, for the same proposition.

> Bernalillo County addresses head-on the cases that the Plaintiffs cite:
>
> Plaintiffs cite *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980), to support their argument that there is waiver of immunity under § 41-4-12 for simple negligence.  Response at 10.  However, that case involved the beating of an inmate by other inmates, without a jailer showing up during the fight, rendering the inmate unconscious.  95 N.M. at 330, 622 P.2d at 235.  This would be the classic example of an officer's negligence resulting in injury to a foreseeable victim where the negligence caused a third party to commit acts specifically found in § 41-4-12 (i.e., assault and battery).  See Dickson v. City of Clovis, 2010-NMCA-058, ¶ 20, 242 P.3d at 403-04 ("[A]llegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party to commit one of the enumerated intentional acts.").

Reply at 4.

Bernalillo County also argues that the "more specific tort . . . of alleged 'negligent placement/classification' of Plaintiff Samayoa into the general population has similarly been rejected."   Reply at 5 (citing Archibeque v. Moya, 116 N.M. at 618, 866 P.2d at 346).   It responds to the Plaintiffs' contention that "the *Archibeque* decision is inapplicable because here Plaintiffs' claim is being made under § 41-4-12 of the TCA, rather than per § 41-4-16."   Reply at 5 (citing Response at 10).  It argues: "What Plaintiffs' argument fails to grasp . . . , is that there is no specific waiver of immunity found in § 41-4-12 for a claim of alleged negligent placement/classification," and as the "Plaintiffs do not contend that the alleged negligent

placement/classification of Plaintiff Samayoa led to an enumerated tort found in § 41-4-12 . . . ,
Plaintiffs' tort claim for negligent placement/classification fails."  Reply at 5.

Bernalillo County last contends that there is no waiver of immunity under the NMTCA
for negligent supervision.  See Reply at 6-7.  Its argument is essentially the same as the one it
made against the negligent placement/classification claim.  It attempts to distinguish a case that
the Plaintiffs cite, Weinstein v. City of Santa Fe, 1996-NMSC-021, 121 N.M. at 648, 916 P.2d at
1315, asserting that, in that case, "law enforcement officers were [alleged to be] negligent in
failing to develop a policy to prevent the premature release of certain prisoners and in failing to
forward the paperwork necessary for the prosecution of a man who later raped the plaintiff,
causing her to suffer a battery."  Reply at 6.  It asserts that this case is consonant with the rule it
articulates that "'[a]llegations of negligence based on one of the torts specified in Section 41-4-
12 are appropriate only when a law enforcement officer's negligence allegedly caused a third
party to commit one of the enumerated intentional acts.'"  Reply at 6 (alteration in
original)(quoting Dickson v. City of Clovis, 2010-NMCA-058, ¶ 20, 242 P.3d at 403-04).
Bernalillo County concludes:

> In short, the question is whether Plaintiffs have stated a claim that alleged
> tort violations [enumerated in] § 41-4-12 [were committed] by Defendant CHC
> [and] were caused by the . . . negligence of Defendant County.  Without
> demonstrating that Defendant CHC engaged in a specific tort found under that
> particular subsection of the TCA, Plaintiffs' claim of alleged negligent
> supervision against Defendant County fails and should be dismissed.

Reply at 7.

4. **The Court Holds a Hearing on the MTD.**

The Court held a hearing on the MTD.  See Transcript of Hearing, taken February 12, 2014 ("Tr.").[4]  The Plaintiffs first clarified that they were not asserting the medical negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, or loss of consortium claims against Bernalillo County.  See Tr. at 4:8-19 (Barela).  Bernalillo County then addressed what it views as the three remaining claims against it: "simple negligence"; "negligent placement or classification"; and "negligent supervision of the [BC]MDC contractor, CHC [Correctional Healthcare Companies]."  Tr. at 6:13-16 (Quinones).  It noted that "the parties agreed in the briefing process that per the Myriah Davis decision, [BC]MDC officers are considered law enforcement officers" under the NMTCA.  Tr. at 6:21-24 (Quinones).  It then proceeded to outline an argument almost identical to the one it laid out in its briefing.  See Tr. at 7:7-11:16 (Quinones).

The Court asked the other parties to the case whether they had any input on the MTD, and they stated that they did not.  See Tr. at 11:19-12:4 (Court, Park, Garcia).  The Plaintiffs then presented their argument, contending that the case at hand is more similar to Methola v. County of Eddy, 1980-NMSC-145, 95 N.M. 329, 622 P.2d 234 (1980) -- a case in which "the [Supreme] Court said . . . when you take custody of a person, everything that you do you have to do in a reasonable fashion," Tr. at 12:24-13:1 (Barela) -- than Lessen v. City of Albuquerque, 2008-NMCA-085, 144 N.M. 314, 187 P.3d 179 (2008) -- a case in which "an inmate was released from the metropolitan detention center[ ] and . . . wandered off into the desert, and ended up falling in an arroyo and meeting his demise," Tr. at 12:13-16 (Barela).  They noted

[4]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 12 -

that, "[h]ere, in this particular case, the defendant county has not argued that the law enforcement officers, their employees, were acting outside the scope of their duties," Tr. at 13:11-14 (Barela), and argued that, because they were acting in the scope of their duties, Bernalillo County had a "duty to exercise reasonable and ordinary care for the protection of life and health of the person," Tr. at 13:20-22 (Barela).  They contend that what was "required was a hospital.  And they're depriving him of that by classifying him as fit to be in the metropolitan detention center by concluding that their contractor of health care services was able to provide the type of services that Mr. Samayoa needed."  Tr. at 13:24-14:3 (Barela).  The Plaintiffs argue that the outcome in Lessen v. City of Albuquerque hinged on foreseeability: "It was not foreseeable that he would wander off into the desert and never make it to his destination."  Tr. at 14:24-15:1 (Barela).  The Plaintiffs also attempted to distinguish the case on the ground that, here, the Plaintiff is "in their facility.  He is not allowed to leave their facility."  Tr. at 17:17-18 (Barela).

The Court then questioned Bernalillo County whether a police officer would be immune from suit if he negligently crashed his cruiser into a citizen and caused personal injury,  see Tr. at 18:22-25 (Court); id. at 19:12-15 (Court), to which it responded that the officer would not be liable, see Tr. at 19:19-25 (Quinones).  Bernalillo County then discussed Cover vs. N.M. State Fair, 111 N.M. 644, 808 P.2d 614 (1991), which it quoted as saying: "No case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in Section 41-4-12."  Tr. at 21:5-9 (Quinones).

The Court then clarified with the Plaintiffs that "the only provision [that they are] coming under is the law enforcement provision," § 41-4-12, which the Plaintiffs confirmed.  Tr. at 21:24-22:2 (Court, Barela).  The Court stated that it was inclined to "think that the county is reading

these [cases] correctly," Tr. at 26:9-10 (Court), and was "inclined to grant the motion and dismiss" the claims, Tr. at 26:25 (Court).

## LAW REGARDING RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

## LAW REGARDING THE NMTCA

The New Mexico Legislature enacted the NMTCA because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  N.M. Stat. Ann. § 41-4-2A.  The New Mexico Legislature also recognized, however,

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

N.M. Stat. Ann. § 41-4-2A.  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  N.M. Stat. Ann. § 41-4-2A.  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  N.M. Stat. Ann. § 41-4-2C.

> The NMTCA is the
>
> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17A.  A plaintiff may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions created for governmental entities and public employees in the NMTCA.  See N.M. Stat. Ann. § 41-4-4 (granting immunity from tort liability to all "governmental entit[ies] and . . . public employee[s] while acting within the scope of [their] dut[ies]"); Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985)("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds, Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).  A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  See Chavez-

Rodriguez v. City of Santa Fe, No. CIV 07-0633 JB/DJS, 2008 WL 5992269, at *6-7 (D.N.M. Oct. 17, 2008)(Browning, J.); Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 133 N.M. 313, 319, 62 P.3d 770, 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 1998-NMCA-004, 124 N.M. 479, 482, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city or its employees or agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution).   Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed.   See Begay v. State, 104 N.M. at 486, 723 P.2d at 255.

      1.      **Section 41-4-6.**

Section 41-4-6 exempts from immunity "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."   N.M. Stat. Ann. § 41-4-6.   This exception balances the principle that "government should not have the duty to do everything that might be done" with the desire "to compensate those injured by the negligence of public employees and to impose duties of reasonable care."   Cobos v. Doña Ana County Hous. Auth., 1998-NMSC-049,

¶ 6, 126 N.M. 418, 420, 970 P.2d 1143, 1145 (1998)(citations omitted)(internal quotation marks omitted).  To resolve the tension between these two goals, § 41-4-6 "grant[s] governmental entities and employees a general immunity from tort liability, [and] waives that immunity in certain defined circumstances."  Cobos v. Doña Ana County Hous. Auth., 126 N.M. at 420, 970 P.2d at 1145.  The Supreme Court of New Mexico has explained that, "[w]hile [§] 41-4-6 may appropriately be termed a 'premises liability' statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal."  Cobos v. Doña Ana County Hous. Auth., 126 N.M. at 421, 970 P.2d at 1146.  Section 41-4-6 "contemplates waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government."  Bober v. New Mexico State Fair, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991)(citations omitted)(internal quotation marks omitted).  New Mexico courts have found that § 41-4-6's waiver of immunity does not extend to negligent supervision, see Pemberton v. Cordova, 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct. App. 1987), negligent design, see Rivera v. King, 108 N.M. 5, 12, 765 P.2d 1187, 1194 (Ct. App. 1988), negligent inspection, see Martinez v. Kaune, 106 N.M. 489, 491-92, 745 P.2d 714, 716-17 (Ct. App. 1987), or negligent classification of a prison inmate, see Archibeque v. Moya, 116 N.M. 616, 620, 866 P.2d 344, 348 (1993).

In the prison context, the Supreme Court of New Mexico has held that "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in [§] 41-4-6, does not include the security, custody, and classification of inmates. . . .  Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions."  Archibeque v. Moya, 116 N.M. at 619, 866 P.2d at 347 (citations omitted).  In Archibeque v.

Moya, Chris Archibeque, an inmate at the Central New Mexico Correction Facility, was transferred to the New Mexico State Penitentiary in Santa Fe, New Mexico.  See 116 N.M. at 618, 866 P.2d at 346.  Before being released into general population, a prison intake officer, Moya-Martinez, met with Archibeque to discuss whether he had any known enemies within the prison's general population.   Archibeque informed Moya-Martinez that another inmate, Gallegos, was one of his enemies, and Moya-Martinez, without checking an available list of current inmates, informed Archibeque that Gallegos was no longer at the prison.   He was released into general population, and Gallegos assaulted him that night.  See 116 N.M. at 618, 866 P.2d at 346.  Archibeque sued Moya-Martinez, other corrections officers, and the New Mexico Department of Corrections in federal court for violations under 42 U.S.C. § 1983 and the NMTCA.  The district court interpreted § 41-4-6 narrowly and held that the statute did not waive immunity for negligent security and custody of inmates at the penitentiary.   Thereafter, Archibeque's § 1983 claims were resolved in favor of Moya-Martinez and the other corrections employees.   The federal district court denied Archibeque's motion for reconsideration. Archibeque appealed, and the Tenth Circuit certified a question to the Supreme Court of New Mexico:

> Does [NMSA 1978, Section 41-4-6] of the New Mexico Tort Claims Act, [NMSA 1978, Sections 41-4-1 to -29], provide immunity from tort liability to an employee of the state penitentiary whose alleged negligence in releasing a prisoner into the general prison population, which included known enemies of the prisoner, resulted in the prisoner being beaten and injured by one of his enemies?

116 N.M. at 617, 866 P.2d at 345 (alterations in original).   Archibeque argued that Moya-Martinez was participating in the operation of the penitentiary when she classified Archibeque as an inmate who could safely be released into the general prison population, and he argued that Moya-Martinez' alleged negligence in misclassifying him and releasing him into the

general population constituted negligent operation of the penitentiary, thereby waiving immunity under § 41-4-6.  See 116 N.M. at 618-19, 866 P.2d at 346-47.  The Supreme Court of New Mexico found that § 41-4-6 did not waive Moya-Martinez' immunity, stating: "The 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in Section 41-4-6, does not include the security, custody, and classification of inmates."  116 N.M. at 619, 866 P.2d at 347. The Supreme Court of New Mexico reasoned that Moya-Martinez was not operating and maintaining the prison's physical premises when she negligently classified Archibeque.

> Rather, she was performing an administrative function associated with the operation of the corrections system.  Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions. To read Section 41-4-6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute.  See State v. Riddall, 112 N.M. 78, 80, 811 P.2d 576, 578 (Ct. App. 1991)(stating that when interpreting a statute, an appellate court is required to consider the plain meaning of the words used and the intended purpose of the statute).

Archibeque v. Moya, 116 N.M. at 619, 866 P.2d at 347.  The Supreme Court of New Mexico further explained:

> While Moya-Martinez's misclassification of Archibeque put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population.  Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, "should not have the duty to do everything that might be done," and limits government liability accordingly.  See N.M. Stat. Ann. § 41-4-2(A).

116 N.M. at 620, 866 P.2d at 348.  According to the Supreme Court of New Mexico, to permit a waiver of immunity under § 41-4-6 whenever injury results from a negligently performed administrative task "would undermine the purpose of the Tort Claims Act by subjecting the State to liability for virtually any mistake made during the administration of corrections facilities that

results in injury to an inmate." 116 N.M. at 621, 866 P.2d at 349.  The Supreme Court of New

Mexico noted that, "[w]hile a segment of the population at risk might justify waiver of immunity

under Section 41-4-6, a situation in which a single inmate is put at risk is not comparable." 116

N.M. at 621 n.3, 866 P.2d at 349 n.3.  The Honorable Richard Ransom, Chief Justice of the

Supreme Court of New Mexico, in his concurring opinion, noted:

> I concur because there was no showing that the general prison population
> reflected anything but the reasonable and expected risks of prison life.  The
> classification of Archibeque did not change the condition of the premises.  I see
> Archibeque's injuries as having been proximately caused by a discrete
> administrative decision.  As an alternative to releasing Archibeque into the
> general population, he could have been placed in administrative segregation, a
> form of protective custody.  The risk arose not from a condition of the premises
> (as with the wild dogs in *Castillo* [*v. County of Santa Fe*, 107 N.M. 204, 755 P.2d
> 48 (1988),] or, arguably, the inadequate health care facilities in *Silva* [*v. State*, 106
> N.M. 472, 745 P.2d 380 (1987)]); it arose from the classification itself.

1993-NMSC-079, ¶ 17, 116 N.M. at 622, 866 P.2d at 350 (Ransom, C.J., concurring).

In Callaway v. New Mexico Department of Corrections, 117 N.M. 637, 642, 875 P.2d

393, 398 (Ct. App. 1994), the Court of Appeals of New Mexico held that the New Mexico

Department of Corrections "knew or should have known that roaming gang members with a

known propensity for violence had access to potential weapons in the recreation area, that such

gang members created a dangerous condition on the premises of the penitentiary, and that the

danger to other inmates was foreseeable." 117 N.M. at 643, 875 P.2d at 399.  The Court of

Appeals of New Mexico found that immunity was waived under the NMTCA, because the

"inmate[-]assailant was unusually dangerous and the prison authorities had knowledge of the

danger posed by the inmate." 117 N.M. at 643, 875 P.2d at 399.

2.      **Section 41-4-12.**

Section 41-4-12 of the NMTCA provides a waiver of immunity for certain torts that law

enforcement officers commit and for negligence that causes a specified tort.   See Oliveros v.

Mitchell, 449 F.3d 1091, 1096 (10th Cir. 2006)(citing Methola v. County of Eddy, 95 N.M. 329,

622 P.2d 234, 238 (1980); Caillouette v. Hercules, Inc., 113 N.M. 492, 827 P.2d 1306, 1311 (Ct.

App. 1992)).  Section 41-4-12 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA
> 1978 does not apply to liability for personal injury, bodily injury, wrongful death
> or property damage resulting from assault, battery, false imprisonment, false
> arrest, malicious prosecution, abuse of process, libel, slander, defamation of
> character, violation of property rights or deprivation of any rights, privileges or
> immunities secured by the constitution and laws of the United States or New
> Mexico when caused by law enforcement officers while acting within the scope of
> their duties.

N.M. Stat. Ann. § 41-4-12.

> Thus, in order to state a tort claim under the waiver of immunity set out in
> Section 41-4-12, a plaintiff must demonstrate that the defendants were law
> enforcement officers acting within the scope of their duties, and that the plaintiff's
> injuries arose out of either a tort enumerated in this section or a deprivation of a
> right secured by law.

Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 121 N.M. 646, 649, 916 P.2d 1313,

1316 (1996).

A law enforcement officer is a "full-time salaried public employee of a governmental

entity whose principal duties under law are to hold in custody any person accused of a criminal

offense, to maintain public order or to make arrests for crimes, or members of the national guard

when called to active duty by the governor."  N.M. Stat. Ann. § 41-4-3.  "New Mexico courts

have construed this definition strictly."   Chavez-Rodriguez v. City of Santa Fe, 2008 WL

5992269, at *4.  See, e.g., Montes v. Gallegos, 812 F. Supp. 1165, 1172 (D.N.M. 1992)(holding

that mayor is not a law enforcement officer under the NMTCA, notwithstanding his statutory authority and obligation to exercise law enforcement functions); Dunn v. McFeeley, 1999-NMCA-084, 127 N.M. 513, 984 P.2d 760, 767 (holding that medical investigator and crime laboratory technician are not law enforcement officers under the NMTCA); Coyazo v. State, 120 N.M. 47, 51, 897 P.2d 234, 238 (Ct. App. 1995)(holding that the District Attorney and his staff are not law enforcement officers under § 41-4-3D); Callaway v. N.M. Dep't of Corr., 117 N.M. at 641, 875 P.2d at 397 (holding that correctional officers at penitentiary are not law enforcement officers under the NMTCA, notwithstanding their statutory power to make arrests); Dunn v. State ex rel. Tax. and Revenue Dep't, 116 N.M. 1, 4, 859 P.2d 469, 472 (Ct. App. 1993)(holding that Director of Motor Vehicle Division is not a law enforcement officer under the NMTCA, notwithstanding his statutory power to make arrests); Vigil v. Martinez, 113 N.M. 714, 721, 832 P.2d 405, 412 (Ct. App. 1992)(holding that probation and parole officers are not law enforcement officers under the NMTCA); Anchondo v. Corr. Dep't, 100 N.M. 108, 111, 666 P.2d 1255, 1258 (1983)(holding that the Secretary of Corrections and the Warden of a state penitentiary are not law enforcement officer under the NMTCA).  See also Johnson v. Holmes, 377 F. Supp. 2d 1069, 1083 (D.N.M. 2004)(Browning, J.)("'Akin' to a law enforcement officer is, as a matter of law, insufficient to waive sovereign immunity under § 41-4-12 NMSA 1978."), aff'd, 455 F.3d 1133 (10th Cir. 2006).

The Court of Appeals of New Mexico has held that corrections officers who hold convicted persons in custody are not law enforcement officers under § 41-4-3D, which defines law enforcement officer as used in § 41-4-12, see Callaway v. N.M. Dep't of Corr., 117 N.M. at 641, 875 P.2d at 397 (stating that "we affirm the trial court's determination that corrections officers are not law enforcement officers under Section 41-4-3(D)"), but those working in jails

"in which the inmates are primarily 'accused of a criminal offense' and awaiting trial, fall within the definition of law enforcement officers under the [TCA]," Davis v. Bd. of Cnty. Comm'rs of Dona Ana Cnty., 1999-NMCA-110, ¶ 35, 127 N.M. 785, 796, 987 P.2d 1172, 1183.   In Anchondo v. Corrections Department, the Supreme Court of New Mexico received a certified question from the Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, asking: "Are the Secretary of Corrections and the Warden of the State Penitentiary in Santa Fe 'law enforcement officers' within the meaning of Section 41-4-3(D), NMSA 1978?" 100 N.M. at 109, 666 P.2d at 1256.   The Supreme Court of New Mexico found that the Secretary of Corrections and the Warden are not law enforcement officers.   See 100 N.M. at 109, 666 P.2d at 1256.   The Supreme Court of New Mexico explained:

> From looking at the statutes, we see that neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of "law enforcement officers."   They do not deal directly with the daily custodial care of prison inmates.   Moreover, because they do not have commissions, they have no power to make arrests or to take people into custody should a violation of the public order occur.   They are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system.

100 N.M. at 109-10, 666 P.2d at 1256-57.   "To determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involved, those duties to which employees devote the majority of their time."   Anchondo v. Corr. Dep't, 100 N.M. at 110, 666 P.2d at 1257.

The Supreme Court of New Mexico has stated that "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in [§ 41-4-12]."   Bober v. N.M. State Fair, 111 N.M. 644, 653-54, 808 P.2d 614, 623-24 (1991).   That does not mean, however, that a law enforcement officer must actually, himself, commit one of the enumerated torts to trigger the waiver: if an officer's negligence

- 24 -

results in a third party committing one of the enumerated torts -- such as where an officer

negligently places an arrestee with individuals the officer should know will harm the arrestee --

then immunity is waived.  See Dickson v. City of Clovis, 2010-NMCA-058, ¶ 20, 242 P.3d at

403-04 ("[A]llegations of negligence based on one of the torts specified in Section 41-4-12 are

appropriate only when a law enforcement officer's negligence allegedly caused a third party to

commit one of the enumerated intentional acts."); Weinstein v. City of Santa Fe,

1996-NMSC-021, 121 N.M. 646, 916 P.2d 1313; Methola v. Eddy Cnty., 1980-NMSC-145, 95

N.M. 329, 622 P.2d 234.

**ANALYSIS**

The Court will dismiss all the Plaintiffs' claims against Bernalillo County pursuant to

rule 12(b)(6), because none of the waivers in the NMTCA apply, and because Bernalillo County

is, thus, entitled to immunity.  The Court's analyses of the three claims overlap almost

completely, and the end result of each is the same: § 41-4-12, the section of the NMTCA that the

parties agree controls, does not contain a waiver of immunity for any of the disputed claims.

**I.    BERNALILLO COUNTY HAS NOT WAIVED ITS IMMUNITY UNDER THE NMTCA WITH RESPECT TO CLAIMS OF SIMPLE NEGLIGENCE, AND, THUS, THE COURT MUST DISMISS THAT CLAIM.**

Bernalillo County is a "political subdivision" of the state, not an "arm of the state," and,

thus, it is not entitled to immunity under the Eleventh Amendment.  Daddow v. Carlsbad Mun.

Sch. Dist., 1995-NMSC-032, ¶ 7, 120 N.M. 97, 101, 898 P.2d 1235, 1239 (noting that, in New

Mexico, cities, counties, and school boards are political subdivisions, not arms of the state).  See

Ambus v. Granite Bd. of Educ., 995 F.2d 992 (10th Cir. 1993)(outlining and applying the

distinction between political subdivisions and arms of the state, and noting that the distinction is

dispositive of the question whether an entity is entitled to immunity under the Eleventh

- 25 -

Amendment).   As a New Mexico "governmental entity," however, it is entitled to blanket immunity from state tort suits.  See N.M. Stat. Ann. § 41-4-4; Todd v. Montoya, 877 F. Supp. 2d 1048 (D.N.M. 2012)(Browning, J.)(applying the NMTCA in a suit against Bernalillo County). If, therefore, the Plaintiffs are to assert a viable claim for relief against Bernalillo County, their complaint must plausibly allege conduct that falls within one of the specific waivers of immunity found in §§ 41-4-5 to -12.  See N.M. Stat. Ann. § 41-4-17A; Borde v. Bd. of Cnty. Comm'rs of Luna Cnty., N.M., 423 F. App'x 798, 801 (10th Cir. 2011)(unpublished)[5]("In moving to dismiss under Rule 12(b)(6) based on a claim of absolute immunity, '[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'"   (alteration in original)(quoting Howards v. McLaughlin, 634 F.3d 1131, 1140 n.6 (10th Cir. 2011), rev'd on other grounds, Reichle v. Howards, 132 S. Ct. 2088 (2012))).[6]  These

---

[5] Borde v. Board of County Commissioners of Luna County, New Mexico is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that Borde v. Board of County Commissioners of Luna County, New Mexico, as well as Ketchum v. Albuquerque Police Department, 958 F.2d 381 (10th Cir. 1992)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[6] Bernalillo County argues that "[u]nder New Mexico law, it is the plaintiff's burden to identify the specific statutory section that waives immunity and to then demonstrate that the facts alleged fit within one of the exceptions."  Reply at 3 (citing Rubio v. Carlsbad Mun. Sch. Dist.,

eight sections each contain unique, conditional, and limited waivers of immunity applicable to

different government entities and operations: -10 applies to health care providers; -6 to buildings,

public parks, and machinery; -7 to airports; and so on.  See N.M. Stat. Ann. § 41-4-5 to -12.  On

the question of which of these sections the Court should use to analyze the claims in this case,

the parties agree: the correctional officers are "law enforcement officers" under the meaning of

§ 41-4-12, and were "acting within the scope of their duties" at the time of the alleged incident,

and so that section is the one at play.  See MTD at 5 n.1; Response at 9; Reply at 3-7 (analyzing

the case under § 41-4-12); Tr. at 10:6-8 (Quinones); id. at 15:15-19 (Barela); id. at 20:12-14

(Barela).  As the statutory definition of "law enforcement officer" includes "any full-time

salaried public employee of a governmental entity whose principal duties under law are to hold

in custody any person accused of a criminal offense," N.M. Stat. Ann. § 41-4-3(D), correctional

officers are law enforcement officers if and only if the facility in which they work holds

primarily inmates awaiting trial rather than convicts.  See Lymon v. Aramark Corp., 728 F.

Supp. 2d 1222, 1269 (D.N.M. 2010)(Browning, J.); Davis v. Bd. of Cnty. Comm'rs of Dona Ana

Cnty., 1999-NMCA-110, ¶ 35, 127 N.M. at 796, 987 P.2d at 1183.  Compare Callaway v. N.M.

Dep't of Corr., 1994-NMCA-049, ¶¶ 9-12, 117 N.M. 637, 641, 875 P.2d 393, 397 (holding that

correctional officers who work at facilities that principally house individuals already convicted

_____

106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987)).  Under the doctrine first articulated in
Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), the federal courts are bound to employ their
own procedural rules in diversity cases -- including the rules for assessing the sufficiency of
pleadings.  See Fed. R. Civ. P. 8(a); Rules of Decision Act, 28 U.S.C. § 1652; Rules Enabling
Act, 28 U.S.C. § 2972.  The Court concludes, however, that Bernalillo County's statement is also
an accurate recitation of federal procedure.  See Glover v. Gartman, 899 F. Supp. 2d 1115, 1153
(D.N.M. 2012)(Browning, J.)("As a threshold matter, T. Glover's Complaint fails to identify the
specific section of the NMTCA pursuant to which he is bringing his claim.  T. Glover may not
sue a New Mexico governmental entity or its employees acting within the scope of their duties,
unless he is bringing his claim pursuant to one of the specific exceptions within the NMTCA."
(citing N.M. Stat. Ann. § 41-4-4(A); Begay v. State, 104 N.M. at 486, 723 P.2d at 252)).

of crimes are not law enforcement officers), with Abalos v. Bernalillo Cnty. Dist. Attorney's Office, 1987-NMCA-026, ¶¶ 26-30, 105 N.M. 554, 560, 734 P.2d 794, 800 (holding that the director of a jail that housed primarily inmates awaiting trial was a law enforcement officer for the purposes of § 41-4-12). The Court is willing to defer to the parties' agreement, although it has yet to see any evidence or allegation that the BCMDC is a facility whose inmates are primarily individuals awaiting trial. But see Abalos v. Bernalillo Cnty. Dist. Attorney's Office, 1987-NMCA-026, ¶¶ 26-20, 105 N.M. at 560, 734 P.2d at 800 (holding that, at least before 1987, the BCMDC was such a facility, and that its officers were law enforcement officers).

Once the appropriate section is identified, the analysis is straightforward. The section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12. This section simply does not -- either on its face or through its construction by the New Mexico courts -- set forth a waiver of immunity for negligence. The Court will therefore dismiss the Plaintiffs' simple negligence claim.

Plaintiffs' confusion stems from the literal manner in which the New Mexico courts have interpreted the language of the statute, which waives immunity from liability for "injury . . . resulting from assault, battery, false imprisonment . . . ." N.M. Stat. Ann. § 41-4-12 (emphasis added). The courts interpret this waiver as encompassing any situation in which a law enforcement officer's actions "result" in injury from one of the enumerated intentional torts,

- 28 -

even if the officer himself was not the one who committed the tort.  See Dickson v. City of Clovis, 2010-NMCA-058, ¶ 20, 242 P.3d at 403-04 ("[A]llegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party to commit one of the enumerated intentional acts."); Methola v. Eddy Cnty., 1980-NMSC-145, 95 N.M. 329, 622 P.2d 234; Weinstein v. City of Santa Fe, 1996-NMSC-021, 121 N.M. 646, 916 P.2d 1313.  If a law enforcement officer's negligence causes an inmate to be thrown to the wolves -- attacked, raped, or subjected to any of the other torts enumerated in the statute by people the officer should have known not to allow around the inmate -- the officer cannot hide behind the general rule of immunity against negligence claims.  See, e.g., 1980-NMSC-145, ¶¶ 2-4, 26, 95 N.M. at 330, 334, 622 P.2d at 235, 239.

It is upon these cases, Methola v. Eddy County and Weinstein v. City of Santa Fe, that the Plaintiffs rely, but the cases stand for what Bernalillo County says they do: one of § 41-4-12's enumerated torts must be the direct cause of the Plaintiff's injury, which in this case means that, "without demonstrating that Defendant CHC engaged in a specific tort found under that particular subsection of the NMTCA, Plaintiffs' claim of alleged negligent supervision against Defendant County fails and should be dismissed."  Reply at 7.  As none of the six claims alleged in the SAC -- medical negligence, negligence per se based on the Emergency Medical Treatment and Active Labor Act, simple negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, or loss of consortium -- is on the list of torts enumerated in § 41-4-12, the Plaintiffs' claim of negligence is subject to immunity under § 41-4-4, and fails as a matter of law.

II.   **BERNALILLO COUNTY HAS NOT WAIVED ITS IMMUNITY UNDER THE NMTCA WITH RESPECT TO CLAIMS OF NEGLIGENT INMATE CLASSIFICATION OR PLACEMENT, AND, THUS, THE COURT MUST DISMISS THAT CLAIM.**

The Plaintiffs cannot sustain a claim that Bernalillo County was negligent in its classification or placement of Williams, because Bernalillo County has not waived its immunity with respect to such a claim. Because the Plaintiffs specifically argue that their claim is viable by way of the waiver of immunity in § 41-4-12, the analysis is identical to the one the Court conducted on their simple negligence claim: the section does not waive immunity for the tort of negligent classification or placement. The Court will not repeat that analysis here.

There is some basis for a claim like this one to be made under N.M. Stat. Ann. § 41-4-6 (waiving immunity for "damages resulting from . . . injury . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings). See Callaway v. N.M. Dep't of Corr., 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct. App. 1994)(holding that a correction facility waived its immunity regarding an assault on an inmate by other inmates where the facility "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable"). The Plaintiffs went to great lengths to specify that they were bringing this claim pursuant to § 41-4-6, however, and the Court is not in the business of restyling plaintiffs' claims to address every conceivable theory of liability. See Response at 10; Tr. at 21:24-22:2 (Court, Barela)(clarifying that the negligent classification claim was not being brought under § 41-4-6, but only under § 41-4-12); Glover v. Gartman, 899 F. Supp. 2d 1115, 1153 (D.N.M.

- 30 -

2012)(Browning, J.)(noting that it is the plaintiff's burden to specify under which exact section it is alleging that a governmental defendant has waived its immunity).

Even had the Plaintiffs brought the claim under § 41-4-6, it would likely fail, because the alleged negligence did not expose the Plaintiff to safety risks -- i.e., the risk of being attacked by fellow inmates -- but rather to health risks.  The Court addressed a similar situation under § 41-4-6 in Lymon v. Aramark Corp.  In that case, the plaintiff alleged that a correctional facility "negligently misclassified him for work in the prison kitchen contrary to his medically ordered restriction prohibiting heavy lifting."  728 F. Supp. 2d at 1266.  The Court, following Chief Justice Ransom's concurrence in Archibeque v. Moya, held that the plaintiff's allegations that other inmates had been misclassified were insufficient to waive immunity under § 41-4-6.  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266.  It stated that, to fall within Chief Justice Ransom's concurrence, a misclassification "must raise security risks, not health risks."  Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266.  The Court found that the plaintiff's "threadbare allegations" that other inmates were misclassified did not rise "to the level of a dangerous condition on the premises of the penitentiary," because no other inmate was alleged to have been injured as a result.  Lymon v. Aramark Corp., 728 F. Supp. 2d at 1267 (internal quotation marks omitted).

Like its claim of simple negligence, the Plaintiffs' claim of negligent classification or placement fails, ultimately, because the Plaintiff was not the victim of any of the enumerated torts in § 41-4-12, and the NMTCA does not otherwise waive immunity for negligent acts.  The Court will therefore dismiss the claim of negligent classification or placement.

III.     **BERNALILLO COUNTY HAS NOT WAIVED ITS IMMUNITY UNDER THE NMTCA WITH RESPECT TO CLAIMS OF NEGLIGENT SUPERVISION, AND, THUS, THE COURT MUST DISMISS THAT CLAIM.**

The Plaintiffs cannot sustain their claim of negligent supervision against Bernalillo County, because § 41-4-12 of the NMTCA contains no waiver of immunity for such a claim. The analysis is identical to the one the Court has already laid out in addressing the simple negligence claim, and the Court will not repeat that analysis here.  As the NMTCA does not waive Bernalillo County's immunity from the claim, the Court will dismiss the Plaintiffs' claim of negligent supervision.

**IT IS ORDERED** that Defendant the Board of County Commissioners of the County of Bernalillo's Motion to Dismiss Plaintiffs' Claims Against Bernalillo County Metropolitan Detention Center, filed January 3, 2014 (Doc. 48), is granted.  The Court will dismiss all claims asserted against Defendant Bernalillo County Metropolitan Detention Center with prejudice, and will terminate Defendant Board of County Commissioners of the County of Bernalillo from the case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Elias Barela
Los Lunas, New Mexico

*Attorney for the Plaintiffs*

- 32 -

Henry F. Narvaez
Bryan C. Garcia
Narvaez Law Firm, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants Board of Regents of the University of New Mexico, University of New Mexico Health Sciences Center, University of New Mexico School of Medicine, University of New Mexico Hospital Behavioral Health Programs, and the University of New Mexico Psychiatric Center*

Carlos M. Quinones
Quinones Law Firm
Santa Fe, New Mexico

> *Attorney for Defendant Bernalillo County Metropolitan Detention Center*

Alfred A. Park
Lawrence M. Marcus
Park & Associates, LLC
Albuquerque, New Mexico

> *Attorneys for Defendant Correctional Healthcare Companies, Inc.*